Nathaniel WRIGHT, III, et al.,
Appellees,

v.

Delbert C. JACKSON et al., Appellants.

No. 74-1353.

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1974.

Decided Nov. 8, 1974.

David P. Sutton, Washington, D. C.
(C. Francis Murphy, Louis P. Robbins
and Richard W. Barton, Washington, D.
C., on brief), for appellants.

Geoffrey Judd Vitt, Alexandria, Va.
(Cohen & Rosenblum, Alexandria, Va.,
William H. Allen, Michael A. Schlanger,
David S. Weissbrodt, and Covington &
Burling, Washington, D. C., on brief),
for appellees.

Before WINTER, RUSSELL and
WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The District of Columbia maintains a
number of prisons where persons con-
victed of crimes committed within the
District are confined. Among such pris-
ons is the Lorton Reformatory which, by
a special Act of the Congress, was con-
structed outside the District in North-
west Virginia. As an integral part of
the District prison system, however, ad-
ministrative control of Lorton, as does
that of all other prisons in the system,
rests entirely with the District of Co-
lumbia Department of Corrections.[1]

The plaintiffs-appellees, all of whom
are inmates of Lorton, have filed this
class action, complaining that, in disci-
plinary proceedings as conducted at Lor-
ton, the plaintiffs and all other inmates
of Lorton are denied their due process
rights. The defendants-appellants are
the Director of the District of Columbia
Department of Corrections and various
officials at Lorton itself. The plaintiffs
seek injunctive relief. Two other ac-
tions brought by other inmates of the
District prison system and involving the
same issues and seeking similar relief
are pending in the District Court of the
District of Columbia.[2]

---

1. *Cf.*, Section 24-442, D.C.Code, 1973.

2. These actions were stayed pending the dis-
position of this case—presumably because

this case was filed earlier than the actions
in the District of Columbia. Since, however,
this case must be remanded it has no real

The defendants by their answer, among other pleas, raised the issue that the proper forum for the disposition of plaintiffs' claims was either the Superior Court or the District Court of the District of Columbia.[3] The District Court seemingly overruled the defendants' contention of inappropriate forum, proceeded to dispose of the action on the merits, and entered a comprehensive decree setting forth in considerable detail the procedures to be observed by the District of Columbia Department of Corrections in disciplinary proceedings at Lorton. This appeal followed. We remand with instructions.

After the entry of the judgment of the District Court herein, the Supreme Court in Wolff v. McDonnell (1974), 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, authoritatively resolved the due process rights of prison inmates in disciplinary proceedings. While a number of the due process requirements established by the District Court complied with the rules authorized by the Supreme Court in *Wolff*, some of them went beyond what the Supreme Court mandated. For this reason, the judgment of the District Court will be vacated and the cause remanded to the Court for further proceedings in light of *Wolff*.

Apart from the validity of the judgment below on the merits, however, the defendants complain of the exercise of jurisdiction over the cause by the District Court of Virginia. We find this contention deserving of earnest consideration. In Canada Malting Co. v. Paterson Co. (1932), 285 U.S. 413, 423, 52 S. Ct. 413, 415, 76 L.Ed. 837, Justice Brandeis said:

"* * * Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or nonresidents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal."

This authoritative admonition for restraint in the exercise of jurisdiction in those cases where there is a more appropriate forum was quoted by Justice Jackson in his exposition of the doctrine of *forum non conveniens* in the leading case of Gulf Oil Corp. v. Gilbert (1947), 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. After quoting from *Canada Malting* and observing that "[t]he principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute",[4] Justice Jackson, speaking for the Court in that case, said (p. 505, p. 841 of 67 S.Ct.):

"* * * On substantially *forum non conveniens* grounds we have required federal courts to relinquish decision of cases within their jurisdiction where the court would have to participate in the administrative policy of a state."

Both *Gulf* and *Canada Malting*, it is true, predated the enactment of Section 1404, 28 U.S.C. That section, however, was not designed to overturn or restrict

---

precedence in terms of trial progress over the two cases in the District of Columbia; all of the cases will necessarily call for a consideration of the standards established in *Wolff*. The plaintiffs can, therefore, suffer no substantial delay in the adjudication of their rights, whether those rights are determined in the District Court of the District of Columbia or in the District Court of Virginia.

3. The defendants' contention is set forth in the fourth defense of their answer:

"These defendants say that the appropriate forum to consider plaintiffs' allegations, regarding the operation of the District of Columbia Correctional facility at Lorton, Virginia, is the Superior Court of the District of Columbia, which court has jurisdiction to consider equitable claims and claims of denial of constitutional rights, and to grant any relief to which plaintiffs may show they are entitled whether as a matter of equity or of constitutional right. In the alternative, the defendants say that the United States District Court for the District of Columbia is the appropriate forum to consider plaintiffs' allegations."

4. 330 U.S. at 507, 67 S.Ct. at 842.

the doctrine of *forum non conveniens* as it was articulated in those cases but, among other reasons, rather to enlarge it and make its exercise more equitable. Norwood v. Kirkpatrick (1955), 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789. That this is so is evident from this statement by Judge Maris, long chairman of the Committee on Civil Rules, in Hoffman v. Goberman (3d Cir. 1970), 420 F.2d 423, 426:

> "A district court may in the interest of justice decline to pass upon the merits of a controversy and relegate the plaintiff to a more appropriate forum. Indeed, as between the district courts of the United States, transfer to a more appropriate federal forum is expressly authorized by statute. 28 U.S.C. § 1404(a)."

This case presents, it would seem, just that unusual case envisaged by *Gulf* and *Canada Malting*, where the Court should decline to decide the merits of the controversy in deference to "a more appropriate federal forum". Actually, we are not dealing here merely with a single separate and independent prison operating under its own individual rules and procedures. What is concerned here is the validity of the operating procedures for all the prisons operated by the Correctional Department of the District of Columbia. Those procedures have been adopted and are to be applied under guidelines fixed by the District Correctional Department in which is vested jurisdiction over all such prisons, whether physically located in the District or without. Those procedures are

intended to apply not merely to Lorton but to all the other prison installations in the entire system. Lorton is thus but one of the institutions affected. But this Court—this District Court of Virginia—is limited in its determination of the validity of those procedures as they apply to inmates of that single installation at Lorton. That is the sole District prison physically within the jurisdiction of a Virginia District Court. The decree of the Virginia District Court can accordingly have no effect on or control over the procedures followed in the other installations of the District of Columbia's prison system. Those other installations are in the District of Columbia and their officials are not subject to injunctive processes issuing from the Courts of the Virginia District. On the other hand, the Courts of the District of Columbia, before which actions involving these same issues are pending, have jurisdiction over the District of Columbia Department of Corrections and its officials and, through them, over all the prisons, *including Lorton*, within the entire District's prison system.

It must be remembered that Lorton, though physically in Virginia, has, as has been emphasized, a "unique relationship to the District of Columbia" and its courts;[5] it is an integral part of that District's governmental operations and its officials are subject to any decree entered by the District Courts of the District of Columbia. The jurisdiction, under authority of whose courts its prison inmates were confined, and by whose administrative officials control over its

---

5. *See* Young v. Director, U. S. Bureau of Prisons (1966), 125 U.S.App.D.C. 105, 367 F.2d 331. This case reiterated the rule earlier established that a suit filed by a disaffected federal prisoner against the Board of Parole in the District of Columbia would normally be transferred to the District where the prisoner was actually incarcerated. But the Court, in order to emphasize that Lorton was a part of the judicial system of the District of Columbia, indicated that a different rule would apply if the prisoner were incarcerated at Lorton and that jurisdiction in the District of Columbia

would be retained in a suit involving an inmate of Lorton. Thus, the Court said (367 F.2d at p. 333, n. 8) :

> "Of course, were the district court to find that some other district would best suit 'the convenience of parties and witnesses' or 'the interest of justice' in a given case, today's decision would not preclude a transfer to such court. Similarly, because of its unique relationship to the District of Columbia, different considerations may well apply to actions instituted by inmates of the Lorton Reformatory, Lorton, Virginia.

prison facilities is exercised, have, as the Court in Preiser v. Rodriguez (1973), 411 U.S. 475, 492, 93 S.Ct. 1827, 36 L.Ed.2d 439, observed, such a peculiarly "intimate" relationship with the operation of those facilities as to give to that jurisdiction a primacy in the disposition of any equitable complaints relating to the operations of those facilities that will not prevail in other circumstances and instances or in the administration of other statutes having national application. Because of its jurisdiction over all the prisons in the District of Columbia system and this "intimate" relationship with them and their officials, the District Courts of the District of Columbia can do what the District Court of Virginia cannot do: They can enter a decree that will have universal application throughout the entire prison system of the District of Columbia and covering all the officials in that system, establishing thereby a uniform procedure in all the prisons for disciplinary proceedings and avoiding the confusion likely to result from having the operations of the several units of the District's prison system subject to injunctive processes issued by separate federal courts.

Common sense, as well as sound judicial administration, argues against having two separate decrees from two separate courts where a single decree from a single court will suffice. Piece-meal fashioning of remedies for the inmates of the District prison system, prison by prison, by the District Court of the District of Columbia and in the District Court of Virginia, is an intolerable waste of judicial effort and imposition on both courts when the entire issue can be resolved by the formulation of a single decree by one of the District Courts that will apply system-wide. All this can easily be avoided by transferring this case to the District Court of the District of Columbia, to be decided along with the other cases pending before it.[6] In that way, there can be a single decree binding on all prisons in the District's prison system; in that way there will be uniformity in the treatment of inmates of any of the prisons; and, finally, in that way, the administrator of the District Correctional System will be supervised by a single court and that the court of the very jurisdiction which had imposed on the inmates of the prison their sentences. In sum, administrative convenience, judicial efficiency, and avoidance of any possibility of conflict between courts all combine to support the wisdom of transfer in this case on principles of comity, as those principles were expressed in Preiser v. Rodriguez, *supra*, where the Court, after remarking that, "[T]he relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen", said:

> " * * * The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." (411 U.S. at 492, 93 S.Ct. at 1837)

We direct, therefore, that, upon remand, the District Court, even though its "jurisdiction [over the action] is authorized by the letter of a general venue statute", decline to decide the action on its merits and transfer the cause to the District Court of the District of Columbia for decision.

Remanded with directions.

---

6. In their answer as well as in argument in this Court, the defendants have argued that the preferable forum for this controversy is the Superior Court of the District of Columbia under the terms of the District Court Reform Act. The actions pending in the District of Columbia are, however, in the District Court and that is the only court to which the District Court, under the terms of Section 1404, can transfer this action. Whether the District Court of the District of Columbia chooses to or can itself transfer jurisdiction to the Superior Court is a matter better resolved by that Court, with its superior acquaintance with the District Court Reform Act.