**William GROSECLOSE, et al.,
Plaintiffs-Appellees,**

v.

**Michael DUTTON, et al.,
Defendants-Appellants.**

**No. 86–5448.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 12, 1986.

Decided Sept. 18, 1987.

Rehearing and Rehearing En Banc
Denied Nov. 3, 1987.

W.J. Michael Cody, Atty. Gen. of Tennessee, Nashville, Tenn., J. Andrew Hoyal, II, Wayne E. Uhl (argued), for defendants-appellants.

Larry D. Woods (argued), Nashville, Tenn., for plaintiffs-appellees.

Hal D. Hardin, Nashville, Tenn., for R. Harries.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal by prison officials of the State of Tennessee from a district court judgment holding that conditions on Tennessee's death row violate the Eighth Amendment. The defendants contest the merits of that holding, and urge that the case should not have gone forward as an independent case in any event, but should have been consolidated with a pending class action that involves the constitutionality of conditions throughout the Tennessee prison system. We agree that the proceedings ought to have been consolidated. In addition, we observe that the district court, not having had the benefit of this court's opinion in *Walker v. Mintzes*, 771 F.2d 920 (6th Cir.1985), applied an incorrect legal standard in deciding the Eighth Amendment issue. We shall vacate the judgment so that the district judge to whom this case will now be assigned can consider the Eighth Amendment issue under the proper legal standard.

\* \* \*

As we explained in a decision dismissing an earlier appeal in this case, 788 F.2d 356 (6th Cir.1986), this action began as a habeas corpus proceeding filed on behalf of death row inmate Ronald Harries by fellow inmate William Groseclose and others, purporting to act as Mr. Harries' next friends. Respondents were the Warden of the Tennessee State Prison and the Commissioner of the Tennessee Department of Corrections. The petitioners did not have the permission of Mr. Harries to act on his behalf, but they maintained that Mr. Harries was being given drugs that affected his ability to act for himself.

On June 6, 1984, the respondents moved to dismiss the petition. They were supported by Mr. Harries, participating as amicus curiae. The district court declined to dismiss the petition. On June 22, 1984, Mr. Harries sought to join the action as a plaintiff under Fed.R.Civ.P. 20, challenging the constitutionality of his conditions of confinement on death row. The district court

granted the motion to join Mr. Harries and ordered that an evidentiary hearing be held to determine his competence. On July 10, 1984, the prison officials moved for reconsideration, offering to include Mr. Harries' allegations in a pending class action concerning the constitutionality of conditions throughout the Tennessee prison system. A district court opinion in that case, which is styled *Grubbs v. Bradley*, is reported at 552 F.Supp. 1052 (M.D.Tenn.1982). (*Grubbs* was previously on the docket of District Judge L. Clure Morton, and is now on the docket of District Judge Thomas Higgins; the instant case was on the docket of District Judge John Nixon.) On August 17, 1984, in a decision reported as *Groseclose v. Dutton*, 594 F.Supp. 949 (M.D.Tenn.1984), Judge Nixon ruled that the habeas corpus action could proceed, that the absence of Mr. Harries in the next-friend petition was due to mental incompetence, and that any waiver of Mr. Harries' post-conviction remedies was involuntary.

On October 10, 1984, Mr. Groseclose moved for certification of a class action as to the death row prison conditions. This motion was granted on November 13, 1984. On December 28, 1984, the defendant prison officials moved for judgment on the pleadings, contending that the findings of the court in *Grubbs* were dispositive of the merits of the instant case. The district court overruled the motion.

In a decision rendered after an evidentiary hearing and reported at 609 F.Supp. 1432 (M.D.Tenn.1985), the district court declared the prison conditions on death row to be unconstitutional and ordered the defendants to submit a remedial plan for consideration by a special master. The defendants filed a notice of appeal. The district court declined to make findings that would have permitted an interlocutory appeal under 28 U.S.C. § 1292(b), and in the decision reported at 788 F.2d 356 we dismissed the appeal on jurisdictional grounds.

On July 1, 1985, the district court appointed Mr. Patrick McManus as a special master to oversee the remedial proceed-ings. Mr. McManus is also serving as the special master in *Grubbs v. Bradley*. A remedial plan was ultimately accepted by the district court in the instant case, and the special master was instructed to monitor its implementation. The defendant prison officials then perfected the present appeal.

Three issues are presented on appeal. First, it is argued that a class action already being prosecuted on behalf of "all" inmates in the Tennessee prison system, *Grubbs v. Bradley*, foreclosed relief in the present case. The prison officials assert that the evidence presented to the district court in this case ought to have been presented to the *Grubbs* court, and they point out that the special master in *Grubbs* is still available to handle the complaints of the death row inmates. Second, it is argued that the trial court erred in finding that living conditions of the death-sentenced inmates violate the Eighth Amendment. Finally it is argued that the trial court improperly delegated authority to the special master to modify the remedial plan approved by the court.

\*   \*   \*

The prison officials point to language in the *Grubbs* class-certification order that defines the *Grubbs* class as "[a]ll persons who are presently or who will in the future be committed as adults to the custody of the Tennessee Department of Corrections and housed in the Tennessee prison system [including the Tennessee State Penitentiary]."

Judge Nixon was aware of *Grubbs*, of course, and in at least two places he explained his reasons for proceeding with the instant case notwithstanding *Grubbs*. In *Groseclose ex. rel Harries v. Dutton*, 594 F.Supp. 949, 958 n. 5 (M.D.Tenn.1984) (*Groseclose I*), Judge Nixon stated that the proposed relief in *Grubbs*, as he read it, did not seem to contemplate any correction of the conditions in Unit VI, the unit where inmates sentenced to death are housed, except for double-celling and food service.[1]

---

1. Inmates sentenced to death have always been housed in single cells. The Unit VI inmates

The issue presented in *Groseclose I* involved Mr. Harries' habeas petition, and Judge Nixon held that *Grubbs* did not foreclose a decision that prison conditions had led to an involuntary waiver of Mr. Harries' right to habeas review.

*Groseclose v. Dutton*, 609 F.Supp. 1432, 1440–41 (M.D.Tenn.1985) (*Groseclose II*), is the decision from which the present appeal was taken. There Judge Nixon stated that his court would

"not relitigate the issues raised in *Grubbs*, but it will examine the impact of the changes in the conditions and policies of Unit VI since the findings of fact in *Grubbs* in 1982 for the following reasons. First, many of the conditions raised in this action were not addressed by the Court in *Grubbs*. See *Groseclose* [*I*], 594 F.Supp. at 958–59 n. 5. Second, when the Court made its findings in *Grubbs*, there were only nineteen inmates sentenced to death in Unit VI; there are now approximately forty-four persons sentenced to death and confined in that unit. Thus, the Court will examine the conditions in Unit VI to the extent that this increase in inmate population has significantly altered the conditions in Unit VI.

Third, when Warden Michael Dutton became warden at the Tennessee State Penitentiary, he made significant policy changes that greatly increased the restrictions on the inmates confined to Unit VI. These changes included elimination of commissary visits, religious services, group dinners, and visits to the gymnasium. The effect of these changes was clearly to make Unit VI a separate 'prison within a prison.' Therefore, the Court will also examine the conditions in Unit VI to the extent that these changes have significantly altered the conditions in Unit VI since the Court's findings in *Grubbs*. Finally, as a practical matter, the Court must examine the conditions on death row because of this Court's finding that the conditions in Unit VI had caused Mr. Harries to waive his legal

rights involuntarily and had contributed to his mental illness. *Id.* at 961. Mr. Harries' personal claim was not at issue in *Grubbs*. Thus, the Court's conclusions of law as to the constitutionality of conditions in Unit VI will be limited to changes in conditions and changes in policies that significantly affect the conditions on death row since the findings of fact in *Grubbs*."

*Groseclose II*, 609 F.Supp. at 1440–41.

\*  \*  \*

In *Goff v. Menke*, 672 F.2d 702 (8th Cir. 1982), the Court of Appeals for the Eighth Circuit vacated a district court order where the district judge had granted relief in a prison conditions case while a class action covering the whole prison system was pending on the docket of another district judge. The Court of Appeals remanded the case and ordered that it be consolidated with the class action.

■ We agree with the logic of the Eighth Circuit decision in *Goff*. To allow two or more district judges to issue directions to prison officials simultaneously would be to create what the *Goff* court aptly characterized as an "inefficient" situation, fraught with potential for inconsistency, confusion, and unnecessary expense. 672 F.2d at 705.

There is already some evidence of inconsistency between the *Groseclose* and *Grubbs* findings. In the portion of *Grubbs* that dealt with the Tennessee State Penitentiary, 552 F.Supp. at 1070–87, the court addressed Unit VI without going into the kind of detail pursued by Judge Nixon in the instant case. For example, the *Grubbs* court did not consider the showers in Unit VI that emit water vapor which, according to *Groseclose*, provides a medium for the growth of unhealthful molds and fungi in the cells. Judge Morton, who heard the *Grubbs* case, thought that ventilation was generally satisfactory: "[E]xcept for Unit VI, where a fan was not working on the day of his inspection, Mr. Hoover reported

who were doubled-celled were general population inmates housed in available space in Unit VI. The number of death-sentenced inmates

has now grown to such an extent that there is no room in Unit VI for anyone else; thus all prisoners in Unit VI are now single-celled.

no serious problems with ventilation at [Tennessee State Prison]." *Grubbs,* 552 F.Supp. at 1074.

Most of the conditions considered by Judge Nixon in the instant case were in existence at the time Judge Morton made his factual findings in *Grubbs.* The primary change is in a policy under which volunteer clergy formerly perambulated the "walks" in Unit VI, visiting with those inmates who desired religious counseling. Death row prisoners can still be visited by clergy, under the new policy, but such visits must now be scheduled in advance and held in the visitation room. Appellees argue that this post-*Grubbs* development makes it proper for the instant case to be considered in isolation from *Grubbs,* but we fail to see why. There is no reason the *Grubbs* court cannot deal with the issue, and every reason why it should. It is hard enough for a single judge to try to supervise the operation of a state prison system, and reasonable people sometimes disagree as to whether a court ought to take on such a task at all; be that as it may, it seems to us that to have two or more judicial cooks stirring the same broth in the same penal kitchen would be a recipe for chaos.

\* \* \*

■ As to the district court's finding that the conditions in Unit VI constitute cruel and unusual punishment, the court made that finding on the basis of a "totality of the circumstances" test that we subsequently rejected in *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985). We therefore VACATE the decision of the district court and REMAND this case to that court with directions that the case be consolidated with *Grubbs v. Bradley.* The Eighth Amendment issue raised by the appellants is to be considered, after the consolidation has been effected, in light of this court's opinion in *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985). This disposition renders moot the contention by the appellants that the district court improperly delegated powers to the special master.