887 F.2d 1287
 Wayne Dillard CARVER, Plaintiff-Appellee,
v.
KNOX COUNTY, TENNESSEE, Joe Fowler, Sheriff,
Defendants/Cross-Plaintiffs, Appellees,
v.
Ned Ray McWHERTER, et al., Defendants/Cross-Defendants/Appellants.
 Nos. 89-5341, 89-5369.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 20, 1989.
Decided Oct. 6, 1989.
Order on Denial of Rehearing Nov. 21, 1989.
Rehearing and Rehearing En Banc Denied Dec. 29, 1989.
 
 John E. Eldridge, Dean Rivkin, Knoxville, Tenn., for plaintiff-appellee.
 John C. Duffy, Asst. City Atty., Dale C. Workman, Law Director, Richard T. Beeler, Robert H. Watson, Jr., Watson, Reeves & Beeler, Knoxville, Tenn., for defendants-appellees, Knox County, Tenn., and Joe Fowler.
 Kimbra R. Spann, and David M. Himmelreich, Asst. Atty. Gen., Charles W. Burson, Atty. Gen., Office of the Attorney General of Tennessee, Nashville, Tenn., for Ned McWherter, W. Jeff Reynolds, and Deborah Miller.
 Before MERRITT, Chief Judge, NELSON, Circuit Judge; and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 This is an action challenging conditions of confinement in the penal facilities of Knox County, Tennessee. The original defendants, the county and its sheriff, filed a third party complaint against state officials responsible for administering the Tennessee penal system. The county defendants contended that the state's policies and practices have caused unconstitutional conditions to exist in the county facilities and that these conditions form the basis of the inmates' claims against the county and the sheriff. When the third party complaint was filed there was an ongoing class action in another district within the state dealing with conditions of confinement in all state-run penal institutions. We conclude that the district court, after making findings of fact and declaring the rights of the inmates, should have transferred a portion of this action to the district court in which the state-wide litigation is ongoing for determination of an appropriate remedy.
 
 I.
 
 2
 This action was commenced on April 25, 1986, in the United States District Court for the Eastern District of Tennessee by Wayne Carver, a pretrial detainee in the Knox County jail, who filed a pro se complaint pursuant to 42 U.S.C. Sec. 1983. The complaint alleged that the jail was overcrowded, causing unsanitary living conditions. It also charged that the jail afforded insufficient opportunity for access to legal material. After determining that the complaint was not frivolous, a magistrate granted Carver's motion for appointment of counsel. Appointed counsel filed an amended complaint naming Knox County and the sheriff as defendants and alleging in greater detail violations of the Eighth and Fourteenth Amendments.
 
 
 3
 The defendants filed an answer denying all allegations of constitutional violations and a third party complaint against the governor, the commissioner of the state department of corrections and other state officials. The third party complaint alleged that the state operated an unconstitutional penal system. In order to relieve overcrowding in state facilities, the United States District Court for the Middle District of Tennessee had entered an order in Grubbs v. Norris, a class action, severely curtailing the admission of new inmates into the state system. Since Knox County housed a number of prisoners sentenced to the Tennessee Department of Corrections (TDOC) while awaiting transfer to a state facility, the Grubbs order caused a back-up in the Knox County facilities, which consisted of a jail, a penal farm and an intake center. The county defendants alleged that the effect of this order and a later order entered in Grubbs that prohibited acceptance of any new prisoners into the state's reception centers was to greatly increase overcrowding in the Knox County facilities. The county defendants charged that actions and omissions of the third party defendants had caused the county defendants to become vulnerable to prosecution and to be named as defendants in inmates' lawsuits. The third party complaint sought declaratory and injunctive relief.
 
 
 4
 The original plaintiff then filed a second amended complaint, naming as defendants the governor and the other state officials first brought into the action by the county defendants' third party complaint, and charging them under Sec. 1983 with responsibility for the alleged unconstitutional conditions in the Knox County facilities. The district court denied the state defendants' motion to dismiss the claims against them.
 
 
 5
 On July 7, 1988, the plaintiff filed yet another amended complaint, asserting a class action "on behalf of all persons who have been or are confined in the Knox County Jail." The complaint listed two sub-classes: one consisting of present and future pretrial detainees in the jail and the other consisting "of all Tennessee Department of Corrections sentenced inmates awaiting transfer to the penitentiary." The amended complaint described injuries to TDOC-sentenced inmates as well as to pretrial detainees and other county prisoners. It charged that the overcrowded conditions were the "direct result" of the state's "failure and/or neglect to remove inmates from the [j]ail, after each inmate ha[d] been sentenced to the Department of Corrections." The amended complaint sought relief against both county and state defendants. On July 15 the district court entered an order certifying the class action as requested by the plaintiff. The issues were joined on the basis of the amended class action complaint and the third party complaint.II.
 
 A.
 
 6
 The district court conducted a bench trial in August 1988 and issued its decision on January 25, 1989. The court found serious overcrowding in two of the three Knox County facilities. The court recognized that overcrowding, in and of itself, is not unconstitutional but found that overcrowding in the Knox County facilities resulted in specified conditions that violated the inmates' constitutional rights. Among these conditions were increased violence at both the jail and the county intake center, a breakdown in the classification system, which added to the violence, a lack of exercise programs and equipment, unsanitary living conditions, and a lack of adequate ventilation. The court also found that the jail's unwritten policy concerning use of the law library and procedure for copying legal materials resulted in "occasional violation" of inmates' constitutional right to court access. In addition, the court found that "the presence of TDOC-sentenced inmates is the primary cause of the overcrowded conditions at the Jail and the Intake Center."
 
 
 7
 The district court recognized that the Eighth Amendment prohibition against cruel and unusual punishment defines the rights of convicted inmates and that the Fourteenth Amendment's Due Process Clause defines the rights of pretrial detainees. Applying these constitutional provisions the court found that both groups of inmates suffered constitutional deprivations that flowed directly from the overcrowded conditions at the jail and the intake center. The court ordered the state and county defendants to propose plans for reducing or eliminating the impermissible conditions found to exist in the facilities. Both groups of defendants filed proposed plans. However, the state defendants did so under protest, stating that adoption of the plan it proposed would interfere with the ongoing relief being fashioned by the Middle District of Tennessee in Grubbs.
 
 
 8
 The district court adopted the major provision of the state defendants' proposal and ordered the removal of 80 TDOC-sentenced inmates from the Knox County facilities within 30 days from February 21, 1989. Thereafter, the court ordered the simultaneous removal of the TDOC-sentenced inmate with the longest incarceration upon the admission of each additional TDOC-sentenced inmate.
 
 B.
 
 9
 On March 6, 1989, the state defendants moved for a change of venue to the Middle District of Tennessee with respect both to issues involved in the cross-claims between the defendants and to relief issues. In support of their motion, the state defendants cited both the ongoing Grubbs case dealing with overcrowding in state facilities and a temporary restraining order issued against the state in another overcrowding case before a different judge in the Eastern District of Tennessee involving the Hamilton County facilities (Roberts v. Reynolds, 6th Cir. No. 89-5307) The movants argued that the overcrowding cases should be consolidated before one judge and coordinated with the ongoing relief in Grubbs to avoid "chaos." This motion was denied from the bench.
 
 
 10
 The district court filed another order and opinion on March 17. The court found that the presence of TDOC-sentenced inmates was the proximate cause of the unconstitutional conditions it had found in the Knox County facilities and that "the only adequate and complete remedy" was for the state defendants to remove additional prisoners until it reduced the overall population to no more than the rated capacity of both facilities. The court ordered that this reduction be accomplished on or before May 30, 1989. This order was made final by entry of a Rule 54(b) certification. The certification was not required to make the order appealable, however, as this court has jurisdiction over appeals from interlocutory orders granting injunctions. 28 U.S.C. Sec. 1292(a).
 
 
 11
 The district court denied the state defendants' motion for a stay pending appeal. On March 30 the present panel granted an emergency motion for stay after hearing oral arguments, and ordered the appeal expedited. The case has been fully briefed and argued and is now ready for decision. Upon consideration we deny the county defendants' motion to dismiss the appeal and proceed to the issues.
 
 III.
 A.
 
 12
 This case cannot be considered in isolation. What began as one inmate's effort to obtain relief from local conditions that he considered unconstitutional has been converted into an action that affects the entire Tennessee penal system. The third party complaint charged that the conditions complained of by Carver resulted from unconstitutional operation of the state system. Thereafter, appointed counsel for Carver sued the state defendants directly and eventually converted this case into a class action embracing a sub-class consisting "of all Tennessee Department of Correction sentenced inmates awaiting transfer to the penitentiary."
 
 
 13
 The county defendants themselves, in the third party complaint, referred to the June 21, 1985, order in Grubbs imposing a cap on the number of prisoners that the department of corrections was permitted to house in Tennessee's twelve adult penal institutions. In the same pleading the county defendants advised of a later order in Grubbs prohibiting the acceptance of any new prisoners into the state's reception centers. At this point it should have been clear that any remedy for conditions in the Knox County facilities that required removal of TDOC-sentenced prisoners could conflict with the remedy being fashioned in Grubbs.
 
 B.
 
 14
 Grubbs v. Bradley,[1] 552 F.Supp. 1052 (M.D.Tenn.1982), was filed as a class action in 1980, asserting that living conditions of the inmates in Tennessee's twelve state penal institutions violated Eighth and Fourteenth Amendment guarantees. The certified class consisted of "all present and future adult inmates committed to the custody of the Tennessee Department of Corrections." Id. at 1055. Chief Judge L. Clure Morton of the Middle District of Tennessee conducted a bench trial in November and December 1981. The court recognized that in addition to the more than 7,000 inmates housed in the twelve state institutions in 1981, "[a]n additional 300 or so state prisoners" were housed in various county jails. Id. at 1059. Although the class certification included these inmates, the court determined that conditions in the county jails would "not be directly reviewed." Id. At the time this determination was made, nothing indicated that the decision in Grubbs would have an impact on the county jails housing state prisoners.
 
 
 15
 In his decision on the merits Judge Morton found seven specific conditions in various institutions that violated constitutional standards. Id. at 1131-32. However, being "acutely sensitive to the delicate balance that must be struck in our federal system between the protection of constitutional rights by federal courts and the state's ability to administer its own affairs," id. at 1130, Judge Morton proceeded cautiously in seeking a remedy. He determined to appoint a special master and required the defendants to submit plans for remedying the impermissible conditions on a strict timetable. Id. at 1132. Judge Morton gave three reasons for his decision to appoint a special master, two of which bear upon the present case:
 
 
 16
 First, the various conditions complained of are intimately interrelated, and care will need to be taken that the remedy developed in response to an existing violation does not lead to other constitutional violations. Similarly, the reduction of population at one institution must not be accomplished in such a way that another facility becomes unconstitutionally overcrowded.
 
 
 17
 Id. at 1131.
 
 
 18
 Following Judge Morton's retirement, Grubbs was assigned to District Judge Thomas A. Higgins, on whose docket it remains. Following a hearing on June 21, 1985, Judge Higgins entered an order on June 27, 1985, requiring the TDOC to reduce the population of state penal institutions to a total of 7,019 inmates by December 31, 1985. Judge Higgins subsequently entered an order prohibiting admission of new or additional inmates into the system's reception centers until the population at one or more reception centers was reduced to or below its "designated capacity." An order on October 23, 1986, raised the overall inmate limit to 7,249. These three orders necessarily caused the impact of Grubbs to reach beyond the twelve state prisons originally considered. One inevitable result of these orders was a slowdown in the movement of TDOC-sentenced prisoners from county jails to state facilities. Thus, when the county defendants and the class action plaintiffs in the present case sought to require the immediate removal of TDOC-sentenced inmates from the Knox County facilities, their goals and the ongoing remedy in Grubbs conflicted. The state defendants brought the Grubbs orders to the attention of the district court and pointed out the conflict.
 
 
 19
 The district court held a hearing on the state defendants' motion to transfer the remedy portion of the Knox County case to the Middle District of Tennessee. We can understand and sympathize with the district judge's dilemma. He had found unconstitutional conditions in penal facilities within his court's jurisdiction and felt compelled to remedy them. Once he concluded that the "proximate cause" of these impermissible conditions was the presence of TDOC-sentenced inmates in the Knox County facilities, however, his chosen solution directly conflicted with the remedy being fashioned on a state-wide basis by Judge Higgins. It was because this conflict was apparent to this court that we issued the stay order in March.
 
 IV.
 
 20
 The county defendants make two venue arguments: (1) that the state defendants waived any objection to venue by making a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., and (2) that the suit could not be transferred because the Eastern District of Tennessee was the only available venue for Carver's original complaint. The class action inmates assert that the state defendants' belated motion for transfer was properly denied because Carver's complaint concerned only conditions "uniquely local" to Knox County and thus forum non conveniens considerations favor leaving the action in the Eastern District of Tennessee. They also contend that they are not members of the Grubbs class.
 
 
 21
 The district court did not rely upon waiver in denying the motion to transfer, and neither will this court. In fact, 28 U.S.C. Sec. 1404(a)[2] does not require a motion; a district court may transfer a case sua sponte. The district court denied the motion because it perceived no conflict between the latest orders in Grubbs and the orders requiring the removal of TDOC-sentenced inmates from the county facilities. Turning to the second argument, the fact that the original Carver claim could have been filed only in the Eastern District of Tennessee became irrelevant when the county defendants and the original plaintiff impleaded the state defendants, all of whom resided in the Middle District of Tennessee where the state capital is located. The third party complaint and amended complaints changed the scope of this action. Once the district court permitted these pleadings, certified a class that included Grubbs class members, and found that the class action plaintiffs' claim arose by reason of events controlled by the state defendants in the Middle District of Tennessee, no venue limitations prevented a transfer. See Bolding v. Holshouser, 575 F.2d 461, 466-67 (4th Cir.) (after noting that a prisoner's action against state officials residing in different districts within the state may be brought in any of the districts, the court added that upon a proper showing the district court might conclude to transfer such a case to a different district from the one in which it was filed), cert. denied, 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978).
 
 
 22
 We disagree also with the assertion that the class action plaintiffs in the present case are not members of the Grubbs class. The subclass in the present case consisting of all TDOC-sentenced inmates awaiting transfer to the penitentiary clearly is included within the Grubbs class consisting of all present and future adult inmates committed to the custody of the TDOC. No one claims that any of the class plaintiffs in the present case are juveniles.
 
 V.
 A.
 
 23
 This is not a case for application of ordinary forum non conveniens considerations to a motion for transfer. The State of Tennessee should not be subjected to competing and conflicting orders as it attempts to solve the prison overcrowding problems that it shares with many other states. The records in Grubbs and in the present case demonstrate that the legislative and executive branches of state government are making sincere efforts to solve the problem. This court stated its view of the matter in Grubbs v. Norris, 870 F.2d 343, decided March 17, 1989, the same day that the district court issued the final order on the merits in the present case. In Grubbs v. Norris, we reversed the district court's denial of a motion by the Metropolitan Government of Nashville and Davidson County to intervene in the original Grubbs case, stating:
 
 
 24
 [W]e believe that the problem of prison overcrowding is one that should not be addressed on a level of competitive divisiveness. It is a problem endemic to the entire state; thus, the solution should reflect its global contours. Unless the affected counties are heard, the solution will be meted out in a fractured, piecemeal fashion. This is an unsatisfactory procedure both for the potential litigants and for the courts who will adjudicate the various lawsuits. We therefore find that addressing the problem in one lawsuit is preferable to encouraging a patchwork case-by-case approach.
 
 
 25
 870 F.2d at 347.
 
 
 26
 This court reached the same conclusion in Groseclose v. Dutton, 829 F.2d 581 (1987). There we reversed the district court's denial of a motion to consolidate with Grubbs another "conditions of confinement" case in the Middle District of Tennessee, involving conditions of death row. In determining that consolidation should have been ordered we stated, "To allow two or more district judges to issue directions to prison officials simultaneously would be to create what the Goff [v. Menke, 672 F.2d 702, 705 (8th Cir.1982) ] court aptly characterized as an 'inefficient' situation, fraught with potential for inconsistency, confusion, and unnecessary expense." 829 F.2d at 584. While both Grubbs v. Norris and Groseclose v. Dutton involved actions already pending in the Middle District of Tennessee and did not require transfers under Sec. 1404(a), we believe the controlling considerations are the same.
 
 B.
 
 27
 In Goff v. Menke, 672 F.2d 702 (8th Cir.1982), Chief Judge Lay ordered consolidation into one class action of all federal actions relating to conditions of confinement in the Iowa State Penitentiary. The state had not requested consolidation, but the court of appeals found that the existence of several standing injunctive orders and the pendency of numerous federal actions challenging conditions in the prison created "a risk of inconsistent adjudications, and confuses and exhausts prison officials, inmates and judicial officers." Id. at 705. The same risks are created by injunctive orders entered by different federal judges that impose conflicting obligations on state corrections officials.
 
 
 28
 The United States Court of Appeals for the Fifth Circuit in Hamilton v. Morial, 644 F.2d 351 (1981), faced a situation similar to the one we now confront. The head of corrections in Louisiana requested "a writ of supervisory mandamus to stay further proceedings in federal district courts within the State ... dealing with interrelated issues of unconstitutional overcrowding in the state penitentiary, parish prisons, and parish and city jails." Id. at 352. At the time, twenty-five such cases either were pending in the federal courts or had already produced court orders. The court of appeals determined that the litigation should "be considered as a unified whole and not in piecemeal fashion." Id. at 353. Concluding that it was faced with a "situation ... involves extraordinary circumstances which permit extraordinary action," id., the court issued an order to all federal district courts in Louisiana with pending actions "or in which a future action may be filed seeking to alleviate crowded conditions in the [state penitentiary], or any prison or jail operated or maintained by a political subdivision of the [state that] may be affected directly or indirectly by an order ... limiting inmate population," to transfer such actions to a single district court. Id. at 354. The court directed a judge in the transferee district to "determine whether all or any part of such [transferred] actions [should] be consolidated for hearing or disposition." Id. The order also directed the transferee judge to determine "whether any portions of such actions not dealing with or affected by limitations on inmate population should be transferred back to the district from which it was transferred." Id.[3]
 
 
 29
 The court in Wright v. Jackson, 505 F.2d 1229 (4th Cir.1974), ordered a class action prison inmate case transferred from the Eastern District of Virginia to the United States District Court for the District of Columbia. By special act of Congress the District of Columbia Department of Corrections operates a prison at Lorton, Virginia. The inmates at Lorton filed a class action in the Eastern District of Virginia claiming that disciplinary procedures at the prison violated due process. Noting that two other actions by inmates of the D.C. system raised the same issues and sought similar relief, the court of appeals ordered the transfer. The court reached this conclusion even though it involved transferring a case to a district within a different circuit. The court stated:
 
 
 30
 Common sense, as well as sound judicial administration, argues against having two separate decrees from two separate courts where a single decree from a single court will suffice. Piece-meal fashioning of remedies for the inmates of the District prison system, prison by prison, by the District Court of the District of Columbia and in the District Court of Virginia, is an intolerable waste of judicial effort and imposition on both courts when the entire issue can be resolved by the formulation of a single decree by one of the District Courts that will apply system-wide. All this can easily be avoided by transferring this case to the District Court of the District of Columbia, to be decided along with the other cases pending before it. In that way, there can be a single decree binding on all prisons in the District's prison system; in that way there will be uniformity in the treatment of inmates of any of the prisons; and, finally, in that way, the administrator of the District Correctional System will be supervised by a single court and that the court of the very jurisdiction which had imposed on the inmates of the prison their sentences. In sum, administrative convenience, judicial efficiency, and avoidance of any possibility of conflict between courts all combine to support the wisdom of transfer in this case on principles of comity,....
 
 
 31
 Id. at 1232 (footnote omitted).
 
 
 32
 The same reasoning employed by these courts leads to our conclusion in the present case.
 
 VI.
 
 33
 This case requires us to exercise our supervisory authority over the district courts. Otherwise, the federal courts will have created an intolerable situation for the State of Tennessee contrary to principles of comity and federalism. In effect, this action and a similar one in the Eastern District of Tennessee--Roberts v. Reynolds--are disputes between counties and the State of Tennessee rather than disputes between inmates and their custodians. We neither overlook nor excuse the fact that the State has permitted unconstitutional conditions to exist within its prison facilities. That fact was established in Grubbs. However, the only common sense approach to solving the state-wide problem is to ensure that the authority commanding changes that will produce a constitutionally satisfactory system speaks with a single voice.
 
 A.
 
 34
 We have concluded that the best approach to the problem presented by this case is to sever the claims against the state defendants and transfer them to the Middle District of Tennessee. In effect, the case now includes two separate lawsuits. As indicated earlier, the Middle District of Tennessee is a district in which the actions against the state defendants "might have been brought." 28 U.S.C. Sec. 1404(a). As in Wyndham Associates, Inc. v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968), this is a case where severance of certain claims is proper and the administration of justice will be served by severing and transferring the claims against the state defendants.
 
 
 35
 Neither the county nor the state defendants challenge the accuracy of the district court's findings of historical facts in the present case. Those findings are not clearly erroneous and are affirmed. However, the district court's conclusion that all of the impermissible conditions it found present in the Knox County facilities are the direct result of the presence of TDOC-sentenced inmates is not supported by the record. There was no showing of what effect an aggressive pretrial release program for detainees charged with minor offenses would have on the inmate population of the county facilities. Nor was there any showing that the increase in numbers of state prisoners exacerbated each of the conditions. These omissions may result from the fact that the inmate plaintiffs prepared their case and marshalled evidence to support an attack on "uniquely local" conditions. Some of the conditions, such as the lack of adequate ventilation and exercise areas, appear to relate to the structures in which the inmates are housed, not to the numbers of inmates. Finally, though it referenced particular conditions in specified locations, the district court appeared to base many of its conclusions of law finding constitutional violations on a "totality of the circumstances" approach, particularly in light of its conclusion that the presence of TDOC-sentenced inmates was the "proximate cause" of the violations it found. This court has rejected a "totality of the circumstances" approach to deciding Eighth Amendment claims of cruel and unusual punishment. Walker v. Mintzes, 771 F.2d 920, 925-26 (6th Cir.1985); Groseclose v. Dutton, 829 F.2d 581, 585 (6th Cir.1987). That approach likewise is not permitted in dealing with Fourteenth Amendment claims by pretrial detainees.
 
 B.
 
 36
 The judgment of the district court is reversed and the claims against the county defendants are remanded to that court for redetermination under proper standards and without the unsupported conclusion that the presence of TDOC-sentenced inmates was the proximate cause of the violations found. If, upon reconsideration, constitutional violations are found to exist, the district court will require the county defendants to take such remedial steps as may be appropriate and necessary to eliminate "uniquely local" conditions of confinement that violate the constitutional rights of inmates.
 
 
 37
 Upon remand the district court will transfer the third party complaint and the claims against the state defendants in the amended complaint to the United States District Court for the Middle District of Tennessee where they will be assigned to Judge Higgins. Following the procedures adopted by this court in the Settlement Order entered in Roberts on October 5, 1989, 887 F.2d 1281, Judge Higgins will fashion a remedy for any unconstitutional conditions found to exist in the Knox County facilities because of the presence of TDOC-sentenced inmates. By committing the relief portion of these claims to Judge Higgins, we are assured that the Knox County remedy will be consistent with the ongoing remedial process in Grubbs. References to Judge Higgins shall apply to any successor judge handling Grubbs in the event that case should be assigned to another judge of the Middle District of Tennessee.
 
 
 38
 So ordered.
 
 ORDER
 
 39
 The inmate plaintiffs have moved for clarification of this court's October 6, 1989 decision in the above-styled case, or in the alternative, have petitioned for rehearing. We find no grounds for granting rehearing, and the petition is denied.
 
 
 40
 With respect to the motion for clarification, we believe a careful reading of the court's opinion makes clear the court's holdings in the matters discussed in the motion. In order to remove any doubts about the meaning of the opinion in this important case, however, the court makes the following observations:
 
 
 41
 (1) This court held that the district court's findings of historical facts, as distinguished from its conclusions respecting these facts, were not clearly erroneous. Panel op. supra at 1294. We also held that the district court committed legal error in concluding on the basis of the "totality of the circumstances" that the facts so found constituted an Eighth Amendment violation. Id. at 1294.
 
 
 42
 (2) This court reasoned that the district court's conclusion that impermissible or unconstitutional conditions existed in the Knox County facilities as the direct result of the presence of TDOC-sentenced prisoners was erroneous because the district court appeared to base its conclusion at least in part on the assumption that overcrowding in a penal institution, in and of itself, creates a constitutional violation. The law is to the contrary. See Rhodes v. Chapman, 452 U.S. 337, 345-47, 101 S.Ct. 2392, 2398-99, 69 L.Ed.2d 59 (1981). The district court's erroneous assumption appears to have led to the unsupportable conclusion that the presence of TDOC-sentenced prisoners in the Knox County facilities was the proximate cause of the unconstitutional conditions it found to exist.
 
 
 43
 (3) This court ordered a remand that requires the district court to reexamine its conclusions by applying the correct legal analysis. It should first analyze local conditions in terms of food, ventilation, condition of cells and holding areas, medical care, acts of violence, sanitation, ratio of guards to inmates, and eating arrangements, and other similar practices and circumstances and then fashion a remedy for the "uniquely local" practices and circumstances causing any unconstitutional violations found to exist. To the extent that the presence of TDOC-sentenced prisoners may be found to contribute to unconstitutional conditions, however, the district court may not order a remedy that requires removal of such prisoners from the Knox County facilities. Instead, the district court is to transfer that portion of the case to the Middle District of Tennessee. Following transfer, the United States District Court for the Middle District of Tennessee will fashion a remedy related to the presence of TDOC-sentenced inmates in the county facilities, following procedures outlined in the Roberts Settlement Order. This will prevent the district court from entering orders for removal of TDOC-sentenced inmates from Knox County facilities that are inconsistent with the statewide remedy being implemented by the district court in the Middle District of Tennessee.
 
 
 
 [1]
 As the state made personnel changes, new defendants were substituted and the style of the case changed. Grubbs v. Norris, previously referred to, is the same case as Grubbs v. Bradley. Hereafter the case will be cited as "Grubbs."
 
 
 [2]
 28 U.S.C. Sec. 1404(a) provides:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 We regard this as an "interest of justice" case.
 
 
 [3]
 Since preparation of this opinion, the Fifth Circuit has issued a decision in which it ordered transfer of a portion of the remedy phase of a prison overcrowding case to the judge presiding over a case involving a statewide challenge to the Texas prison system. As in this case, county defendants in a prisoner suit had filed a third party complaint against state officials charging that the State's failure to remove state-sentenced prisoners to state facilities promptly after conviction and sentencing was a primary cause of overcrowding in the county's penal facilities. See In re Clements, 881 F.2d 145 (5th Cir.1989)