Wayne Dillard CARVER, et al., Plaintiffs,

v.

KNOX COUNTY, TENNESSEE, et al., Defendants.

No. Civ. 3–86–299.

United States District Court, E.D. Tennessee, N.D.

March 19, 1990.

See also 753 F.Supp. 1394.

John E. Eldridge and Dean Rivkin, University of Tennessee Legal Clinic, Knoxville, Tenn., for plaintiffs.

Richard T. Beeler, Knox County Law Director, Robert H. Watson, Sr., John Duffey, Knoxville, Tenn., for defendants.

David Himmelreich, Asst. Atty. Gen., Nashville, Tenn., for third-party defendants.

## MEMORANDUM OPINION

JARVIS, District Judge.

On October 6, 1989, the United States Court of Appeals for the Sixth Circuit issued a memorandum opinion which ordered this court to undertake the following:

(1) Sever the claims against the state defendants and transfer them to the United States District Court for the Middle District of Tennessee where they will be assigned to District Judge Thomas A. Higgins;[1] and

(2) Redetermine the claims against the county defendants under proper standards and without the unsupported conclusion that the presence of TDOC-sentenced inmates was the proximate cause of the constitutional violations previously found by this court.

*Carver v. Knox County, Tennessee,* 887 F.2d 1287, 1294 (6th Cir.1989). The Sixth Circuit subsequently "clarified" its memorandum opinion on November 21, 1989, *see id.* at 1294–95, in which it reiterated that this court's "findings of *historical facts,* as distinguished from its conclusions respecting these facts, were not clearly erroneous." *Id.* at 1294 (emphasis in original).

In reversing this court as to its conclusions of law, the Sixth Circuit initially stated on October 6, 1989, *inter alia:*

Finally, though it referenced particular conditions in specified locations, the district court appeared to base many of its conclusions of law finding constitutional violations on a "totality of the circumstances" approach, particularly in light of its conclusion that the presence of TDOC-sentenced inmates was the "proximate cause" of the violations it found. This court has rejected a "totality of the circumstances" approach to deciding Eighth Amendment claims of cruel and unusual punishment. *Walker v.*

*Mintzes,* 771 F.2d 920, 925–26 (6th Cir. 1985); *Groseclose v. Dutton,* 829 F.2d 581, 585 (6th Cir.1987). That approach likewise is not permitted in dealing with Fourteenth Amendment claims by pretrial detainees.

*Id.* at 1293–94. The Sixth Circuit subsequently observed on November 21, 1989:

This court reasoned that the district court's conclusion that impermissible or unconstitutional conditions existed in the Knox County facilities as a direct result of the presence of TDOC-sentenced prisoners was erroneous because the district court appeared to base its conclusion at least in part on the assumption that overcrowding in a penal institution, in and of itself, creates a constitutional violation. The law is to the contrary. *See Rhodes v. Chapman,* 452 U.S. 337, 345–47, 101 S.Ct. 2392, 2398–99, 69 L.Ed.2d 59 (1981). The district court's erroneous assumption appears to have led to the unsupportable conclusion that the presence of TDOC-sentenced prisoners in the Knox County facilities was *the proximate cause* of the unconstitutional conditions it found to exist.

*Id.* at 1294 (emphasis in original). Thus, the Sixth Circuit ordered a remand that:

... requires the district court to re-examine its conclusions by applying the correct legal analysis. It should first analyze local conditions in terms of food, ventilation, condition of cells and holding areas, medical care, acts of violence, sanitation, ratio of guards to inmates, and eating arrangements, and other similar practices and circumstances and then fashion a remedy for the "uniquely local" practices and circumstances causing any unconstitutional violations found to exist. To the extent that the presence of TDOC-sentenced prisoners may be found to contribute to unconstitutional conditions, however, the district court may not order a remedy that requires removal of such prisoners from the Knox County facilities. Instead, the district court is to

---

1. This facet of the remand has already been disposed of by a separate Memorandum and

Order [Doc. 199] entered on March 2, 1990.

transfer that portion of the case to the Middle District of Tennessee.

[*Id.*]. For the reasons that follow, the court concludes that it has already accomplished precisely what the Sixth Circuit now orders on remand, and this court, like the Sixth Circuit undertook to do on November 21, 1989, makes the following observations in order to remove any doubts about the meaning of this court's opinion of January 25, 1989, 753 F.Supp. 1370 [*see* Doc. 132] in this important case.

1. With regard to the Sixth Circuit's finding that this court *"appeared* to base many of its conclusions of law finding constitutional violations on a 'totality of the circumstances' approach", *see id.* at 1294 (emphasis added), this court previously stated as follows:

> Finally, in evaluating the convicted inmates' Eighth Amendment claims, the court is mindful that the Sixth Circuit Court of Appeals has recently rejected the "totality of the circumstances" test. *Groseclose v. Dutton,* 829 F.2d 581, 585 (6th Cir.1987); *Walker v. Mintzes,* 771 F.2d 920, 925–26 (6th Cir.1985). In other words, even though this court is required to consider all of the prison's conditions and circumstances in evaluating the sentenced inmates' Eighth Amendment claims, the court must find a specific condition on which to base an Eighth Amendment claim, *i.e.,* it must amount to a deprivation of "life's necessities." *Walker,* 771 F.2d at 925 (quoting *Rhodes v. Chapman,* 452 U.S. at 347, 101 S.Ct. at 2399).

[*See* 753 F.Supp. at 1385–86]. Thus, as the above language indicates, this court neither intended to use, nor did it in fact use, the "totality of the circumstances" test.[2] Rather, this court was acutely aware that it "must find a *specific condition* on which to base an Eighth Amendment claim ..." [*see* 753 F.Supp. at 1386 (emphasis added)]. However, this court was also required to examine all of the prison's conditions at the

same time that it examined specific conditions. As the Sixth Circuit recently stated:

> Subsequent to *Rhodes,* this circuit has interpreted its language as requiring an examination of "all the prison's conditions and circumstances, rather than isolated conditions and events, when addressing eighth amendment claims." *Walker v. Mintzes,* 771 F.2d 920, 925 (6th Cir.1985). Moreover, "[i]n certain extreme circumstances the totality itself may amount to an eighth amendment violation, but there still must exist a specific condition on which to base the eighth amendment claim." *Id.*

*Wilson v. Seiter,* 893 F.2d 861, 864 (6th Cir.1990). Furthermore, although not specifically stated in the opinion, this court did not employ the "totality of the circumstances" approach in dealing with Fourteenth Amendment claims by pretrial detainees. In conformity with the applicable law, this court did note that "... conditions and practices in a given institution which would constitute impermissible punishment of convicted prisoners under the less scrutinizing Eighth Amendment would likewise be unconstitutional as applied to pretrial detainees." (citations omitted) [*See* 753 F.Supp. at 1386]. Because this court did, in fact, find constitutional violations under the Eighth Amendment, it likewise was compelled to find those same constitutional violations under the Fourteenth Amendment. In short, this court analyzed the facts under what it then believed to have been the correct legal standard and will do so again.

2. With regard to the Sixth Circuit's finding that this court *"appeared* to base its conclusion at least in part on the assumption that overcrowding in a penal institution, in and of itself, creates a constitutional violation," *see Carver,* 887 F.2d at 1293 (emphasis added), this court utilized the following legal standard on the issue of overcrowding:

> More importantly, this court relied on these cases for the very reason the Sixth Circuit cited them.

---

**2.** It is interesting to note that the two cases relied upon by the Sixth Circuit in reversing this court on this issue are the same two cases relied on by this court in this conclusion of law.

In *Bell v. Wolfish*[3], the Supreme Court recognized that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the due process clause as to whether these conditions amounted to punishment ..." 441 U.S. at 542 [99 S.Ct. at 1875–76.] The constitutional standard on overcrowding cannot be expressed in a square footage formula. Rather, whether a particular institution is unconstitutionally overcrowded depends on a number of factors including the size of the inmate's living space, the length of time the inmate spends in his cell each day, the length of time of his incarceration, his opportunity for exercise and his general sanitary and living conditions. *Id.* at 543 [99 S.Ct. at 1876;] *Dawson v. Kendrick*, 527 F.Supp. [1252] at 1295 [ (S.D.W.Va.1981) ]. In this regard, the Supreme Court has emphasized the length of confinement under allegedly deplorable conditions as being relevant to the analysis of an Eighth Amendment claim. In *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), *reh. denied*, 439 U.S. 1122, 99 S.Ct. 1035 [59 L.Ed.2d 83] (1979), the Supreme Court noted:

> It is equally plain, however, that the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months.

*Id.*, 437 U.S. at 686–87, 98 S.Ct. at 2571. [753 F.Supp. at 1386–87]. The legal standard employed by this court, therefore, recognizes that the issue in question is not overcrowding *per se*—rather, it is *unconstitutional* overcrowding. In other words, this court recognizes that a prison facility is not unconstitutional simply because it is overcrowded. In order to ascertain whether a particular facility is unconstitutionally overcrowded, this court reviewed "... a number of factors including the size of the inmates' living space, the length of time the inmate spends in his cell each day, the length of time of his incarceration, his opportunity for exercise and his general sanitary and living conditions ..." [*see* 753 F.Supp. at 1387], as it was required to do under the applicable law. Applying the appropriate factors to the Knox County Jail, the court specifically concluded as follows with regard to the issue of overcrowding:

> From the proof introduced at trial, the court concludes that the overcrowded conditions at the Jail, and especially in the drunk tank of the Jail, are punitive and violative of the Fourteenth Amendment as applied to pretrial detainees and are violative of the Eighth Amendment as being inadequate shelter when applied to convicted inmates. The recalculated TCI-related capacity is 228. The credible proof at trial indicates that the inmate population at the jail has hovered between 260 and 270 for several two to three-month periods during the last two years. As a result, many of the inmates are forced to sleep on the floor of the day rooms and even on the floor of the drunk tank. Moreover, the court finds that the living conditions in the drunk tank of the Jail are particularly deplorable due to the fact that this part of the facility was designed only to hold up to 12 intoxicated individuals for a short period of time, *i.e.*, 24 to 48 hours; yet, the credible proof at trial indicates that this drunk tank has regularly housed 30 to 50 persons for extended periods of time up to and exceeding one month. The court concludes that these overcrowded conditions at the Jail exhibit the unjustified hardship contemplated in *Wolfish*,[4] as constituting punishment and exceed the minimal line separating cruel and unusual punishment from conduct that is not when applied to the sentenced inmates, *see Cunningham v. Jones*, 567

---

**3.** 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

**4.** 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

F.2d [653], at 656 [6th Cir.1977], due to the length of time that the inmates are required to endure these conditions and coupled with the fact that there is no fresh air, no opportunity for outdoor exercise, and the fact that the inmates are not always promptly provided basic necessities such as mattresses, sheets and towels, nor are they promptly provided personal hygiene items such as toothpaste, toothbrushes, and toilet paper.

[*See* 753 F.Supp. at 1387]. Similarly, in applying the appropriate factors to the Knox County Intake Center, the court specifically concluded as follows with regard to the issue of overcrowding:

Applying the legal standards set forth at Section III, C., 1., *supra,* the court concludes that the overcrowded conditions at the Intake Center, and especially in the drunk tank of the Intake Center, are punitive and violative of the Fourteenth Amendment as applied to pretrial detainees and are violative of the Eighth Amendment as being inadequate shelter when applied to convicted inmates. The TCI-rated capacity of the Intake Center is 127. The credible proof at trial indicates that the inmate population at the Intake Center has exceeded this capacity on occasion. For example, Grand Jury foreman Catron testified that the facility held 143 inmates on February 2, 1988. Similarly, the TDOC jail census summaries indicated that the Intake Center housed 154 prisoners on May 13, 1988. As a result, many inmates have been forced to sleep on mattresses on the day room floor and even on the drunk tank floor. Like the drunk tank at the Jail, the court finds that the living conditions in the drunk tank at the Intake Center are particularly deplorable due to the fact that this part of the facility was designed only to hold up to 16 intoxicated individuals for a short period of time, *i.e.,* 24 to 48 hours; yet, the credible proof at trial indicates that this drunk tank not only has regularly housed many more inmates than its rated capacity but also has housed them for several weeks at a time. The court concludes that these overcrowded conditions at the Intake

Center exhibit the unjustified hardship contemplated in *Wolfish* as constituting punishment and exceed the minimal line separating cruel and unusual punishment from conduct that is not when applied to sentenced inmates, *see Cunningham v. Jones,* 567 F.2d at 656, due to the length of time that the inmates are required to endure these conditions combined with the court's finding that there is no fresh air or opportunity for outdoor exercise. Moreover, inmates are not always promptly provided basic necessities such as mattresses, sheets and towels, nor are they promptly provided personal hygiene items such as toothpaste, toothbrushes, and toilet paper.

[*See* 753 F.Supp. at 1392–93]. Thus, the court has fully analyzed the issue of overcrowding under the appropriate legal standard and must again conclude that it is unconstitutional.

3. Pursuant to the remand of the Sixth Circuit, this court has re-examined its conclusions of law regarding food, ventilation, condition of cells and holding areas, medical care, acts of violence, sanitation, ratio of guards to inmates, and eating arrangements. The court has also re-examined all of the authorities cited in its conclusions of law and is of the opinion that those cases embrace the proper standards for examining these "uniquely local" conditions of confinement. Because the court again concludes that it has fully and correctly analyzed the facts under the appropriate legal standards, the court therefore adopts by reference all of its earlier conclusions of law set forth at Pages 33 through 61 of its Memorandum Opinion of January 25, 1989 [*see* 753 F.Supp. 1370] except as they discuss the cause for the unconstitutional conditions [*see id.,* p. 1392] since that issue is now reserved for determination by Judge Higgins.

Order accordingly.