Scotty GRUBBS, et al.,
Plaintiffs–Appellees,

The Metropolitan Government of Nash-
ville and Davidson County, Proposed
Intervenor/Appellant,

v.

Stephen H. NORRIS, et al.,
Defendants–Appellees.

No. 87–5196.

United States Court of Appeals,
Sixth Circuit.

Argued May 13, 1988.

Decided March 17, 1989.

James L. Charles (argued), Michael E. Moore, Mark C. Scruggs, Nashville, Tenn., for proposed appellant.

Gordon Bonnyman, W.J. Michael Cody, Ann Lacy Johns, Kimbra R. Spann (argued), Nashville, Tenn., David Kozlowski (argued), Legal Services of South Cent. Tennessee, Inc., Columbia, Tenn., for appellees.

Before ENGEL, Chief Judge, and KEITH and RYAN, Circuit Judges.

KEITH, Circuit Judge:

The Metropolitan Government of Nashville and Davidson County ("Metro") appeals the decision of the United States District Court for the Middle District of Ten-

nessee denying its application to intervene by right as a plaintiff in this civil rights action involving conditions of confinement in Tennessee prisons. For the reasons set forth below, we REVERSE the decision below, and REMAND the case to the district court with instructions to grant the motion to intervene.

## I. FACTS

On August 11, 1980, Tennessee's prison inmates brought suit against state corrections defendants ("the state") pursuant to 42 U.S.C. § 1983 to challenge conditions in Tennessee's prison system. The case originated in state court and made its way to federal court when the Tennessee Supreme Court abstained from deciding the case due to the presence of significant constitutional issues. After discovery and trial, the district court determined that conditions in the Tennessee prisons violated the federal Constitution. The court ordered appointment of a special master, ordered submission of a plan to rectify constitutional violations, and retained jurisdiction over the matter to insure compliance with its orders.

Dissatisfied with the state's efforts to comply with those orders, on June 27, 1985, the district court ordered the state to reduce its prisoner population level to 7,019 inmates by December 31, 1985. On October 2, 1985, plaintiff-prisoners moved for additional relief, requesting the release of inmates or, in the alternative, that admission of new inmates to state prison reception centers be restricted. The Sheriff of Davidson County then moved to intervene; that motion was denied as untimely. On October 25, 1985, the state prisoners' motion for further relief was granted, and admittance to the state reception centers was restricted (the "October 1985 Order").

Restricting admittance to state reception centers had the effect of increasing the number of prisoners in the local and county prisons, since certain state prisoners are temporarily detained in local and county facilities pursuant to the mandate of the Tennessee Comprehensive Correction Im-

provement Act, Tenn.Code Ann. § 41–1–504 (1985). According to that statute, the Governor may direct courts and sheriffs to stay the process of committing felons to state facilities. This "delayed intake directive" therefore would increase the number of state felons in Metro's jails awaiting removal from Metro's jails to a state facility.

Since January 15, 1986, Metro's inmate population has exceeded its designated capacity. On the other hand, by June of 1986, the state's prison population was below its designated capacity. On June 13, 1986, the state filed a report with the district court which demonstrated its compliance with the court's earlier orders, and which asked that the court modify its October 1985 Order to increase the state's prisoner population cap to 7,249, up from the 7,019 limitation. On September 10, 1986, the Special Master filed a Report and Recommendation asking that the state's request to increase the overall prison population be granted. This Report and Recommendation was adopted by the district court on October 28, 1986.

Exceeding its designated capacity by approximately 300 inmates, one third of whom were convicted felons sentenced to the state penitentiary, Metro moved to intervene by right as a plaintiff, pursuant to Fed.R.Civ.P. 24(a)(2). The plaintiff-prisoners did not object to the intervention; however, the state did oppose the motion. On January 9, 1987, the district court denied Metro's motion to intervene on two grounds: that allowing intervention would prejudice the relief granted to the existing parties to the action; and that the factual basis for intervention did not establish a need for intervention by right under Rule 24(a)(2). This appeal followed.

## II. DISCUSSION

The sole issue before this court is whether the district court erred in denying the Metropolitan Government's motion to intervene.[1] Fed.R.Civ.P. 24(a)(2) provides:

---

1. Appellants attempted in their brief to raise a second issue—whether the court of appeals

should modify the district court's injunction prohibiting Metro from transporting state pris-

(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, according to this court's opinion in *Triax Co. v. TRW Inc.,* 724 F.2d 1224, 1227 (6th Cir.1984), the proposed intervenors must meet four criteria before intervention by right is permitted: (1) the application for intervention must be timely; (2) the applicant must have a substantial, legal interest in the subject matter of the pending litigation; (3) the applicant's ability to protect that interest must be impaired; and (4) the present parties do not adequately represent the applicant's interest. The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied. *Id.*

■ This circuit has not expressly adopted a standard of review for the denial of a motion to intervene of right except for the timeliness requirement, which is reviewable under an abuse of discretion standard. *Bradley v. Milliken,* 828 F.2d 1186, 1191 (6th Cir.1987); *Michigan Association for Retarded Citizens v. Smith,* 657 F.2d 102, 105 (6th Cir.1981). While permissive intervention under Rule 24(a) is clearly only reviewable under an abuse of discretion standard, there is a trend to review intervention of right using a more liberal standard of review. *See especially Stringfellow v. Concerned Neighbors,* 480 U.S. 370, 107 S.Ct. 1177, 1185, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring), where Justice Brennan, in distinguishing Rule 24(b) permissive intervention from intervention of right under Rule 24(a), wrote that "Rule 24(a) considerably restricts the court's discretion whether to allow intervention of

right by providing that such a party '*shall* be permitted to intervene.' " *Id.* 107 S.Ct. at 1185, n. 1 (emphasis in original). Thus, he concluded, "a district court has less discretion to limit the participation of an intervenor of right than of a permissive intervenor." *Id.* at 1185.

The Ninth Circuit, as articulated in *County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir.1986), *cert. denied sub nom. Irvine v. County of Orange,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); *California ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 792 F.2d 779, 781 (9th Cir.1986); and *United States v. $129,374 in U.S. Currency* 769 F.2d 583, 585 (9th Cir.1985), *cert. denied sub nom. Geiger v. United States,* 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986), deploys an abuse of discretion standard for the timeliness prong of the intervention of right requirements, and reviews *de novo* the remaining Rule 24(a)(2) factors. We take Justice Brennan's admonition to heart, and adopt the Ninth Circuit's standard of review in Rule 24(a) cases.

### A.

■ According to *Triax,* 724 F.2d at 1228, in determining whether an intervention is timely, a court will consider the following factors: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention. *See also Michigan Association for Retarded Citizens v. Smith,* 657 F.2d 102, 105 (6th Cir.1981). As mentioned above, a trial court's decision with respect

oners held in Metro's facilities to the state's reception centers. By order dated November 16, 1987, this court concluded that this issue

was not properly before us. Thus, our review here is restricted to the question of the propriety of the district court's denial of intervention.

to the timeliness of a motion to intervene is reviewed under an abuse of discretion standard. *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir.1987). Timeliness should be evaluated in the context of all relevant circumstances. *Id.*

■ One of the implicit bases for the district court's denial of intervention below is that the motion was untimely, since "remedial measures" were "in place and well underway," and to grant the motion would prejudice the rights of the existing parties. Opinion at Joint Appendix p. 421. We are unconvinced by this rationale. It was precisely the district court's *remedy*—the October 1985 Order restricting admission of state prisoners to state reception centers—that triggered Metro's clear interest in the action. The district court cannot then turn around and deny intervention because the action is in the "remedial" stages. The court logically could not mean to suggest that Metro should have intervened *before* its October 1985 Order outlining the remedy: Metro had no way of knowing in advance that the court was going to select the precise remedy that it did, and that its own interest would be so affected. We cannot demand of potential intervenors that degree of prescience. Indeed, Metro, through the Sheriff of Davidson County, intervened immediately *after* the October 1985 Order, and that first motion was denied as untimely and premature, since the intervenor had not yet suffered harm. Metro dutifully waited until its overcrowding became staggering, and moved again to intervene, and the court ruled that intervention too late. Metro was therefore squeezed from both ends in its efforts to intervene. We find this unacceptable, and rule that Metro's motion meets the timeliness requirements outlined in *Triax*.

### B.

■ The second prong of the Rule 24(a)(2) requirements is that the proposed intervenor must have a direct and substantial interest in the litigation. *Brewer v. Republic Steel Corporation*, 513 F.2d 1222 (6th Cir.1975). The interest must be significantly protectable. *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971).

The district court, in considering the application for intervention, held that the factual basis underlying Metro's motion to intervene was "erroneous." The court found that, while Metro's penal facilities were indeed overcrowded, the evidence failed to establish that the remedial measures taken by the state were the sole cause, and that only 13.85% of Metro's prisoners were those sentenced to state prisons. The court found that other categories of inmates in Metro's jails had increased in number more than the state inmates awaiting transfer to state facilities. Indeed, the court found that even if the requested relief were granted, Metro's overcrowding problem would remain.

We find that the purpose for which Metro seeks to intervene is substantial. The Metropolitan Government admits that the district court's injunction and the governor's delayed intake directive are not the cause of all of its overcrowding; it argues only that the presence of the state prisoners "materially worsens" the overcrowding. As Metro's facilities become more overcrowded, its interest increases. At the time of the proposed intervention, the conditions within Metro's jails and workhouse were volatile and dangerous. The designated capacity of Metro's facilities is 782. As of the date of the October 1985 Court Order, the population was approximately 745. As of December 11, 1985, the date of the Governor's order and delayed intake directive, the population was approximately 776. In September, 1986, the time of the application for intervention, Metro's population had skyrocketed to over 1,000, more than 100 of whom were prisoners whose transfer into the state system was being delayed as a result of the combined effect of the October 1985 Order and the Governor's order and delayed intake directive.

If overcrowding in Metro's facilities persists, the jails and workhouse will present a danger both to employees and prisoners. Food and health services are likely to remain severely strained. The court's reme-

dy severely restricted the ability of the Sheriff of the Metropolitan Government to transfer into the state prison system inmates sentenced by the courts but remanded to Metro's custody pending transfer. This remedy therefore has caused the inmate population to swell substantially beyond what it otherwise would have been without the court's action. We find, therefore, that the presence of state prisoners in the Metropolitan Government's facilities materially worsens the already overcrowded conditions there, and that this is a significantly protectable interest.

### C.

The third requirement under Rule 24(a)(2) is that the disposition of the lawsuit will impair Metro's ability to protect its own interest. The Metropolitan Government has no ability to protect its interest other than intervention in this lawsuit. The combination of the October 1985 Order and the delayed intake directive means that Metro must absorb the state prisoner overflow, with no regard to the status of its own overcrowding. Metro and other affected counties will be left with the remedy of filing separate and individual lawsuits against the state to challenge the new Tennessee statute and the Governor's delayed intake directive. We believe that a plethora of such lawsuits would be counterproductive and would create years of unnecessary delay. Concerns of judicial economy and swift resolution of disputes counsel us to urge that this related matter be addressed in this primary lawsuit.

Appellees in oral argument suggested that to permit intervention in this case would open the floodgates for intervention by every county in Tennessee. We are not persuaded by this argument, for two reasons. First, appellees admitted that there are possibly only three counties in the state where the county inmate population might exceed its designated capacity as a result of the delayed intake directive and October 1985 Order; not every county would be adversely affected by the relief. Second, we believe that the problem of prison overcrowding is one that should not be addressed on a level of competitive divisiveness. It is a problem endemic to the entire state; thus, the solution should reflect its global contours. Unless the affected counties are heard, the solution will be meted out in a fractured, piecemeal fashion. This is an unsatisfactory procedure both for the potential litigants and for the courts who will adjudicate the various lawsuits. We therefore find that addressing the problem in one lawsuit is preferable to encouraging a patchwork case-by-case approach.

### D.

Fourth, the burden is on the Metropolitan Government to demonstrate that the present parties do not adequately represent its interest. *Meyer Goldberg, Inc. v. Goldberg,* 717 F.2d 290, 293 (6th Cir.1983). That burden is minimal. *Trobvich v. United Mine Workers,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). If the interest of the absent party is not represented at all, or if all existing parties are adverse to the absent party, then she or he is not adequately represented. 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 1909 (1986). The question of adequate representation does not arise unless the applicant is somehow represented in the action. An interest that is not represented at all is surely not "adequately represented," and intervention in that case must be allowed. *Id.* at p. 319.

In this case, there are no other local entities party to the action. Metro's interest is at odds with the interests of the existing parties; the state benefits from the court's remedy at Metro's expense. Thus, the Metropolitan Government's interest is not adequately represented by current parties to the action; indeed, Metro's interest is not represented at all.

### III. CONCLUSION

The Metropolitan Government has met the requirements of Fed.R.Civ.P. 24(a)(2), and therefore should be permitted to intervene in this lawsuit. Thus, we REVERSE the decision of the district court, and REMAND the case to the District Court for the Middle District of Tennessee with in-

**348**

structions to permit the intervention of the Metropolitan Government.

ENGEL, Chief Judge, dissenting.

With respect, I dissent. Succinctly put, I do not believe it was an abuse of discretion for the district court to have denied intervention in this already attenuated case so as to introduce at this late stage in the proceedings an essentially new and largely independent question concerning the overcrowding of the other penal institutions or municipal units not already directly involved in this litigation. As Chief Justice Burger commented in *Swann v. Charlotte–Mecklenburg Board of Education*, 402 U.S. 1, 22, 91 S.Ct. 1267, 1279, 28 L.Ed.2d 554 (1971), "One vehicle can carry only a limited amount of baggage." In its opinion the majority indicates that the standard of review for denial of a motion to intervene pursuant to Fed.R.Civ.P. 24(a)(2) should be bifurcated: (1) For the timeliness factor, the appellate court should consider only whether the district court abused its discretion; (2) For the other three traditional 24(a)(2) factors, (substantial interest in the subject matter of the litigation; whether ability to protect that interest is impaired by the litigation; and whether or not that interest is adequately represented by the original parties, *Triax Co. v. TRW Inc.*, 724 F.2d 1224, 1227 (6th Cir.1984)), the standard should be "de novo." In support of its choice of a bifurcated standard of review, the majority cites Ninth Circuit law and a somewhat abstruse comment made by Justice Brennan in a concurrence in *Stringfellow v. Concerned Neighbors*, 480 U.S. 370, 107 S.Ct. 1177, 1185, 94 L.Ed.2d 389 (1987).

As the majority indicates, the abuse of discretion standard for the timeliness factor was well established in this circuit in *Michigan Association for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981). Until now, however, our court has not addressed the standard of review for the other three 24(a)(2) factors. The majority view here chose a bifurcated standard following the minority of other circuits which have considered this question. Both the Second and Third Circuits have ex-

pressly adopted a single "abuse of discretion" standard for review of denial of a motion pursuant to Rule 24(a)(2). *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 990–92 (2d Cir.1985); *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir.1987). The rationalization behind a single "abuse of discretion" standard is clearly articulated by the Second Circuit:

> Although this more relaxed standard of review may tend in practice to blur somewhat the distinction between intervention as of right under Rule 24(a)(2) and permissive intervention under Rule 24(b), the great variety of factual circumstances in which intervention motions must be decided, the necessity of having the "feel of the case" in deciding these motions, and other considerations essential under a flexible reading of Rule 24(a)(2), particularly in government enforcement actions, are precisely those which support an abuse of discretion standard of review.
>
> ... That task is best left to the district judge, particularly this judge, who has lived for the last five years with this action.... He especially is in a far better position than we to weigh the advantages to be derived from appellants' participation as intervenors....

*Hooker*, 749 F.2d at 991 (citations and footnotes omitted).

The foregoing construction more closely accords with my own notions of what an exercise of judicial discretion should be. We should not shackle every judge with rigid tests for the exercise of discretion for the one is inconsistent with the other. In this type of case I do not believe this is necessary. The trial judge is in possession of a wide variety of considerations in exercising his discretion. To require some type of bifurcated technical adherence runs not only against general notions of equity jurisprudence but detracts from his ability to make that overall, broad and general exercise of discretion which is most likely to yield a productive and just result in the case at hand. When judges are appointed under Article III of the Constitution, they are expected to possess good judgment.

That judgment, and not some narrowly binding technical criteria, is the quality which best assures a just and sensible decision and should be the foundation for a judge's exercise of discretion.

While I therefore would not follow a bifurcated standard of review for the reasons indicated above, even under such standards the district court should be affirmed. The district court based its denial of intervention on two of the four *Triax* standards. First the court held that Grubbs did not have a substantial interest in the litigation. Second it held that the parties would be severely prejudiced by the intervention. The latter of course is one of the several considerations to be taken into account in determining the timeliness of an intervention motion. *See Michigan Association for Retarded Citizens*, 657 F.2d at 105.

As the majority admits, the district court's determination that the motion to intervene was not timely is necessarily governed by an "abuse of discretion" standard. The Tennessee trial judge here, who presumably would know more about the case than we from his closer familiarity with it, believed that intervention "would prejudice the original parties to the action and very possibly threaten the relief now being afforded." The majority opinion does not discuss this express finding of prejudice but instead cites an alternate "implicit" finding of undue delay made by the district court as a basis for reversal. It seems that if a district court is to be reversed for abusing its discretion, that reversal should be based upon the district court's expressed findings rather than other "implicit findings" which are viewed by our court with greater weight.

Next, and perhaps most important, District Judge Higgins here concluded that the causal link between the crowded condition at the intervenor's facilities and the remedy imposed in the instant suit was simply too attenuated to constitute a "substantial interest" on behalf of the intervenor. In other words, to allow intervention here would allow the tail to wag the dog. Even were we to review this holding "de novo" I would affirm. While the intervenor's facilities are undoubtedly overcrowded, those same conditions will remain even if the remedy in the instant suit is removed or altered. The court found and the intervenor expressly conceded that other categories of inmates were growing more rapidly in numbers in intervenor's facilities than the Tennessee Department of Corrections inmates awaiting transfer. The result is to enlarge substantially the scope of the litigation at a late date and in my view it is thus a question of whether we are now adding excess baggage to the original suit which was commenced or whether the subject matter involved in the original litigation is itself excess baggage to another and very large problem posed in other institutional facilities to which the original plaintiffs are not parties.

Finally, our circuit's case law holds that intervention should not be allowed where the intervenor's interests are discrete and may be protected through "separate and independent avenues of relief that were not designed to be pursued through a unitary enforcement procedure." *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1223 (6th Cir.1975). *See also Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir.1987). Here intervenor's interest involves issues of local politics and concerns and would be better protected in a separate suit or in a different forum altogether.

In sum I believe that the decision of whether to enlarge the already protracted litigation of this case by the introduction of entirely new issues is at the very best a decision which ought properly to be left in the district court. The result of the majority's opinion will be to vest a large administrative control in one single federal judge, a control extending both to state and municipal penal institutions justified only by the fact that inevitably the operation of one must affect in some way the operation of the other. This is certainly not an adequate basis for mandating a joinder, least of all where it is the considered judgment of the district judge in charge of the litigation that it would not promote the legitimate interests of the parties.