RENDERED: JANUARY 6, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0902-MR

JASON WOOD                                                                APPELLANT

v.

APPEAL FROM SIMPSON FAMILY COURT
HONORABLE G. SIDNOR BRODERSON, JUDGE
ACTION NO. 19-CI-00115

MICHELLE ANN CRITZ AND BRIAN
STRAIN                                                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON,
JUDGES. [1]

THOMPSON, K., JUDGE: This case concerns the right of Brian Strain to

intervene post-judgment in a dissolution action between Jason Wood and Michelle

Ann Critz to establish himself as the biological father of S.J.W. and thereby seek

---

[1] Judge Kelly Thompson authored this Opinion before his tenure with the Kentucky Court of Appeals expired on December 31, 2022. Judge Denise G. Clayton concurred in this Opinion prior to her retirement from the Court of Appeals. Release of this Opinion was delayed by administrative handling.

custody and timesharing rights.  Jason appeals from the February 24, 2021 order sustaining Brian's motion to intervene and the July 15, 2021 order sustaining Brian's motion to amend final judgment pursuant to Kentucky Rules of Civil Procedure (CR) 60.02.  We affirm because Brian's motion to intervene was timely under the circumstances, his motion for CR 60.02 relief was brought within a reasonable amount of time given the fraud that occurred which prevented his appearance to be heard regarding paternity in the dissolution matter, and the DNA test warranted relief.

Jason and Michelle married in 2011 and three children were born during their marriage, H.W.W., K.A.W., and S.J.W. (collectively the children). S.J.W., a boy, was the youngest.

Michelle was having an affair with Brian in 2015 when she became pregnant with S.J.W.  Michelle informed Brian in March or April of 2015 that she was pregnant and that he could be the father.  Michelle offered to have prenatal paternity testing done if Brian would pay for it.  It is disputed whether Brian agreed, but no testing was ultimately performed.  S.J.W. was born in November 2015.

According to Jason's deposition testimony, based upon his marital interactions with Michelle, he had no reason to doubt that S.J.W. was his child.  It was not until 2017 that he became suspicious that S.J.W. might not be his

biological child based on Michelle's behavior. In July 2017, Jason used an over-the-counter DNA test to test himself and S.J.W. The online results he received indicated that he was not S.J.W.'s father and when confronted, Michelle acknowledged that S.J.W. was not Jason's child but would not tell him who was.

According to Michelle's and Brian's discovery admissions, Michelle informed Brian of the result of Jason's test. Later in July 2017, Brian then also took an over-the-counter DNA test which indicated that he was S.J.W.'s father. According to Brian, Michelle told him that they did not want him in S.J.W.'s life and wanted him to sign over his rights, but when Brian said he wanted to be involved, Michelle stopped communicating with him.

On March 27, 2019, Jason filed a petition for dissolution and stated that the three children were "born of this marriage" and requested joint custody with Michelle to be the primary residential custodian and Jason to have parenting time. Michelle's response and the parties' property settlement agreement were filed simultaneously. Michelle admitted to the allegations in the petition. The agreement specified "[t]he parties have three infant children" and "shall have joint custody of their children[.]" Jason agreed to pay child support in the amount of $200 per week. The tax benefit for the three children was divided between them.

Jason and Michelle did not raise any issue as to S.J.W.'s paternity in the dissolution action. Brian admitted learning at some point that Jason and

Michelle were divorcing but disputes that Michelle informed him of this or communicated anything about how the dissolution proceeding related to his paternity rights.

On September 16, 2019, the decree of dissolution of marriage was entered, adopting Jason's and Michelle's property settlement agreement.[2] Immediately thereafter, despite receiving child support from Jason for all three children, Michelle sought child support from Brian through the Simpson County Child Support Office. On October 8, 2019, in 19-J-00118, a paternity action was filed on her behalf. Brian appeared with counsel and opposed paying child support. Pursuant to a court order, a DNA test was performed and on October 24, 2019, the results revealed that Brian was the biological father of S.J.W.

Jason filed a motion to intervene in the paternity action and a motion to dismiss based on the decree. According to Brian, he first learned on December 10, 2019, during an evidentiary hearing that paternity of S.J.W. had already been adjudicated pursuant to the decree of dissolution on September 16, 2019. On December 18, 2019, Jason's motion to intervene was granted and the paternity

---

[2] That same day, an amended property agreement was filed which modified the agreement as to the children to be a split custody arrangement with alternating weeks of parenting time, with Jason continuing to pay $200 a week of child support. While the original property agreement was named in the pre-drafted findings of fact and conclusions of law and the decree of dissolution that the court signed, it appears that the parties followed the split custody arrangement.

petition was dismissed without prejudice on the basis of the decree having previously determined paternity.

According to Brian and Michelle, after the paternity action was initiated, Michelle allowed Brian to have visits with S.J.W. during the weeks she had physical possession of the children, with Brian beginning with supervised visits and culminating with him having overnight visits. He had about one visit per week when Michelle had the children. Brian stated that he had fifteen to twenty overnight visits with S.J.W. However, Jason disputed that this frequency of visits took place based on what he had heard from the children. It is undisputed that Brian never provided any monetary support for S.J.W. other than providing for S.J.W. during visits.

On October 13, 2020, the Cabinet for Health and Family Services filed a dependency, neglect, and abuse petition against Michelle based upon her driving the children in her vehicle when she was intoxicated and removed the children from her care. Regarding S.J.W., this was in 19-J-0090-003. Following the removal of the children from Michelle's care, the children were placed with Jason, who was granted temporary custody, and Michelle had supervised visits. At this time, Brian ceased to have any visits with S.J.W.

On October 20, 2020, Brian filed simultaneous motions to intervene and amend the final judgment in the dissolution action pursuant to CR 60.02. He

argued he was the biological father of S.J.W. and sought a finding to that effect so that he could pursue custody and timesharing. Jason opposed Brian's motions to intervene and amend the final judgment; Michelle took no position on Brian's motions. Extensive discovery then took place regarding Brian's knowledge of S.J.W.'s parentage and the visitation he had engaged in with S.J.W.

According to Jason's deposition testimony, Brian showed up at S.J.W.'s fifth birthday party which caused problems. Jason explained that afterwards he was instructed by either the Cabinet or the family court in the dependency, neglect, and abuse action, that Brian was not to have contact with S.J.W.

On December 17, 2020, Brian also filed a motion to intervene in the dependency, neglect, and abuse case to establish temporary visitation. On January 15, 2021, Brian filed a separate paternity action in 21-CI-00019.

On February 24, 2021, the family court summarily granted Brian's motion to intervene in the dissolution action and continued his motion to amend, scheduling an evidentiary hearing. Jason filed a motion to alter, amend, or vacate this order.

On April 5, 2021, Brian's motion to intervene in the dependency, neglect, and abuse action was denied because he had never been adjudicated to be S.J.W.'s parent.

On July 15, 2021, two orders were entered in the dissolution proceeding, an order denying Jason's motion to alter, vacate, or amend the order granting Brian's motion to intervene, and an order sustaining Brian's motion to amend the final judgment pursuant to CR 60.02. As to the denial of the motion to alter, amend, or vacate, the family court considered the factors enumerated in *Carter v. Smith*, 170 S.W.3d 402, 408 (Ky. App. 2004), regarding whether intervention was warranted post-decree. The family court considered the history as to what had transpired in the dissolution and paternity cases. It found that the purpose of intervention to adjudicate paternity rights was distinct from a property rights case as it involved Brian's fundamental constitutional rights. The family court indicated "the best interests of [S.J.W.] must be considered, and [Brian's] rights as a biological parent are significant." The family court found that, in considering the length of time Brian knew or should have known of his interest in the case, "one could certainly argue that [Brian] did not move very fast, but given the circumstances, the Court can understand that [Brian] did not do more than he did prior to the DNA test with the Simpson County Child Support Office." As to prejudice, the family court explained:

> The Court is sympathetic to [Jason] when considering
> this factor, as [Jason] has treated [S.J.W.] as a . . . [son],
> but at the same time, the Court does not think that the
> intervention poses any undue prejudice to [Jason].
> Ultimately, the Court will have to make a decision
> considering the best interest factors as to what

relationship, if any, [Brian] and [Jason] will have to [S.J.W.]

As to unusual factors, the family court found "the underlying acts in this action are somewhat unusual but not unheard of, and it is certainly not the norm." Finally, the family court concluded that Brian's special burden for post-judgment intervention was met, explaining further:

> The Court finds that considering all facts and circumstances, [Brian] could have acted sooner. As indicated, [Brian] could have filed an action all on his own, as early as the birth of [S.J.W.], but he did not. It is understandable under the facts and circumstances, as [Brian] was not familiar with the law as a layman, and he was unsure what he could or could not do before he hired legal counsel. If this was neglect, it was excusable neglect, and the Court finds that the issue regarding timeliness has been overcome.

The family court granted Brian's motion to amend the final judgment on the basis that he was a party to the action, the court had subject matter jurisdiction, and relief was proper pursuant to CR 60.02(f). The family court explained its reasoning as follows:

> The Court finds this is a case with an extraordinary nature, because it involves the constitutional rights of the minor child's biological parents. The Court finds that such rights were not addressed in the divorce action by [Brian], as he was not a Party to such action, and one or both of the legal parents knew there was a high chance that [Brian] was [S.J.W.]'s biological father, yet gave [Brian] no notice of the divorce action.

Jason appeals from the February 24, 2021 order allowing Brian to intervene, and the July 15, 2021 order granting Brian's motion to amend the final judgment, both of which were designated as final and appealable orders for which there is no just cause for delay.[3]

We first consider the timeliness of the motion to intervene. Jason argues that the family court abused its discretion in allowing Brian to intervene in the dissolution action because his motion to intervene was untimely under CR 24.01 and CR 24.02, given an appropriate application of the *Carter* factors. Jason specifically argues that Brian was well aware that he could be S.J.W.'s father during Michelle's pregnancy, was aware he was the father prior to the divorce based on the over-the-counter paternity test, waited too long to attempt to intervene, and had no meaningful parental relationship with child.

Brian in contrast argues that permitting his intervention was not an abuse of discretion because he had a fundamental right to parent, custodial actions are never final, and he only learned about the decree adjudicating paternity in December 2019. Brian also argues that Jason and Michelle intentionally concealed

_____

[3] After the appeal was filed, the family court held an evidentiary hearing regarding Jason's, Michelle's, and Brian's rights to custody and timesharing of S.J.W. It appears that the family court ruled Jason was a *de facto* custodian of S.J.W. and ordered that Jason and Michelle have a split custody timesharing arrangement regarding all the children, with Brian ultimately awarded some limited timesharing with S.J.W.

the dissolution proceedings from him and the material fact that Jason was being adjudicated S.J.W.'s father, and Jason's hands are subsequently unclean because he perpetrated a fraud on the court by representing that S.J.W. was a child born of the marriage. Brian emphasizes that it is the best interests of S.J.W. which are paramount and that he had an established relationship with S.J.W.

CR 24.01(1) provides in relevant part:

Upon timely application anyone shall be permitted to intervene in an action . . . (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

We review whether Brian's motion to intervene was timely under the abuse of discretion standard. *Carter*, 170 S.W.3d at 408. We apply the five-factor test as set out in *Carter* to determine timeliness:

(1) [T]he point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

-10-

*Carter*, 170 S.W.3d at 408 (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). We also recognize that "intervention may be allowed under certain circumstances even after the judgment has been entered, although . . . the applicant would have to overcome a special burden to justify the apparent lack of timeliness." *Id.*

We are confident that the family court adequately addressed these factors and acted appropriately within its discretion in determining that under the specific facts of this case Brian's intervention was timely. While we agree that the evidence establishes that Brian was aware of the fact that he could be S.J.W.'s biological father before S.J.W. was born, we do not think this precludes his intervention being timely under the circumstances. These circumstances include the importance of Brian's interest having a constitutional dimension and his lack of knowledge that paternity could be and was resolved in the dissolution action until December 2019. It is significant that paternity was resolved in the dissolution action without any notice to Brian or notice to the family court that the parties had reason to believe that Jason was not the biological father of S.J.W. We believe that had the family court received such information, it would not have simply entered the agreed upon judgment but would have instead required notice to Brian for his participation in such action; had that happened and Brian chosen not to participate, Brian seeking to act now might well be untimely. However, that is not what

occurred. Under these circumstances, we do not believe that Jason has established that the family court abused its discretion in determining that Brian's motion to intervene was timely.

As to whether substantively Brian should have been allowed to intervene, we review the grant of intervention under the clearly erroneous standard. *Carter*, 170 S.W.3d at 409. Having determined that the motion was timely filed, we consider whether Brian "has an interest relating to the subject of the action, that his ability to protect his interest may be impaired or impeded, and that none of the existing parties could adequately represent his interests." *Id.* at 409-10. There can be no doubt that Brian's claim to have a right to custody and timesharing as S.J.W.'s father is an interest that he is entitled to protect through intervention. The contrary finding in the dissolution action was impeding his ability to claim paternity and the related custodial and timesharing rights available due to such a status, and neither Jason nor Michelle could or did adequately represent his interests. *See Baker v. Webb*, 127 S.W.3d 622, 625 (Ky. 2004) (explaining that relatives who have priority of placement for a child placed for adoption are thereby vested "with a sufficient, cognizable legal interest in the adoption proceeding of this child"); *A. H. v. W. R. L.*, 482 S.W.3d 372, 374 (Ky. 2016) (explaining that CR 24.01(1)(b) is applicable to allow intervention in an adoption action to someone "claiming a cognizable legal interest – i.e. maintaining a relational connection with

the child, either through custody or visitation"). Therefore, the family court allowing Brian to intervene in the dissolution action was not clearly erroneous.

As to whether CR 60.02 relief was warranted, Brian sought relief pursuant to CR 60.02, generally asserting as grounds (b) and (f), and the family court granted relief pursuant to CR 60.02(f). Jason argues that the family court abused its discretion in granting Brian CR 60.02(f) relief as his grounds for relief were really founded in CR 60.02(b), and more than a year had elapsed between when Brian knew he was S.J.W.'s biological father and the filing. He asserts that Brian had no justification for the delay of more than a year in acting even after formal testing had revealed he was S.J.W.'s biological father. Jason argues granting CR 60.02 relief was unwarranted given Brian's prior knowledge of his paternity and his failure to act constituted waiver of his rights. Finally, Jason argues he established a parental relationship with S.J.W. and had become the equitable father of S.J.W.

Brian argues relief was appropriate pursuant to CR 60.02(f) based on his constitutional rights as S.J.W.'s biological parent. He emphasizes that Jason and Michelle failed to provide him any notice in the dissolution action. Brian argues that Jason knew he was not the biological father of S.J.W. prior to his initiation of the dissolution action, but Jason nevertheless indicated the children were born of the marriage and sought joint custody of them, which "was an

-13-

assertion of fraud upon the trial court." While Brian recognizes that there is a rebuttable legal presumption that a child born during a marriage is the child of the husband and wife pursuant to Kentucky Revised Statutes (KRS) 406.011, he argues here it was overcome by DNA testing in the paternity action and CR 60.02(f) relief is thus appropriate. Brian argues that his potential knowledge of his paternity prior to the entry of the decree is not the same as him making a knowing and voluntary waiver of his fundamental constitutional right to parent.

"CR 60.02, is a safety valve, error correcting device for trial courts." *Kurtsinger v. Board of Trustees of Kentucky Retirement Systems*, 90 S.W.3d 454, 456 (Ky. 2002). "[CR 60.02] is designed to allow trial courts a measure of flexibility to achieve just results and thereby 'provides the trial court with extensive power to correct a judgment.'" *Id.* (quoting *Fortney v. Mahan*, 302 S.W.2d 842, 843 (Ky. 1957)).

CR 60.02 provides in relevant part as follows:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: . . . (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; . . . or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken.

As explained in *Kurtsinger*, "the broad discretion of the trial court" to grant relief pursuant to CR 60.02 is "not [to be] disturbed unless the trial judge abused his/her discretion." *Kurtsinger*, 90 S.W.3d at 456. "Two of the factors to be considered by the trial court in exercising its discretion are whether the movant had a fair opportunity to present his claim at the trial on the merits and whether the granting of the relief sought would be inequitable to other parties." *Fortney*, 302 S.W.2d at 843 (citations omitted).

Importantly, "it is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009). We interpret Brian's motion for CR 60.02 relief as implicating CR 60.02 generally, although he suggested that (b) and (f) were the grounds most likely to have merit. While the family court appropriately granted relief pursuant to CR 60.02(f), we believe that the record supports relief based on CR 60.02(d) better than CR 60.02(f) and focus our discussion on CR 60.02(d). While CR 60.02(b) and (c) could also be implicated, relief subject to those subsections would be untimely.

In *Terwilliger v. Terwilliger*, 64 S.W.3d 816 (Ky. 2002), the Kentucky Supreme Court thoroughly discussed the distinction between fraud under CR 60.02(c) as compared with (d). It also rejected the dichotomy of "intrinsic" versus

-15-

"extrinsic" fraud in overruling *Rasnick v. Rasnick*, 982 S.W.2d 218 (Ky.App.

1998). The Court's reasoning in *Terwilliger* is instructive:

> The Court in *Rasnick* held that nondisclosure of
> assets in a divorce proceeding does not constitute "fraud
> affecting the proceedings" within the meaning of CR
> 60.02(d). The *Rasnick* decision draws a distinction
> between fraud intrinsic to the proceedings, such as
> perjury or nondisclosure during pretrial discovery which
> causes injury to a single litigant, and "extrinsic" fraud,
> which, the Court held, constitutes "fraud affecting the
> proceedings." In reexamining the *Rasnick* decision,
> which relies primarily upon decisions from other
> jurisdictions, this Court finds that the definition of "fraud
> affecting the proceeding" utilized by the Court in *Rasnick*
> is an overly restrictive conception of CR 60.02(d). *It is
> the finding of this Court that fraud on a party is, in fact,
> "fraud affecting the proceedings."* As Appellant notes,
> by filing a settlement agreement with knowingly
> undervalued marital assets, Mr. Terwilliger used the
> proceedings as a tool to defraud his wife.
>
> Whatever popularity the distinction between
> intrinsic and extrinsic fraud may have enjoyed in the
> past, the judicial tide is turning against the distinction in
> favor of equity. According to the leading authority on the
> Kentucky Rules of Civil Procedure,
>
>> As a general proposition [fraud affecting the
>> proceedings] relates to what is denominated
>> 'extrinsic' fraud. This covers fraudulent conduct
>> outside of the trial which is practiced upon the
>> court, or upon the defeated party, in such a manner
>> that he is prevented from appearing or presenting
>> fully and fairly his side of the case.
>>
>> The distinction between extrinsic and intrinsic
>> fraud has been widely criticized and has been
>> rejected by more recent [federal] decisions.

> 7 Kurt A. Philipps, Jr., *Kentucky Practice*, CR 60.02,
> cmt. 6 (5th Ed. 1995). Our rule, however, does
> distinguish between fraud affecting the proceedings as
> discussed herein, and the presentation of perjury or
> falsified evidence, which is clearly a fraud upon the
> court. This distinction is important because the latter can
> be raised only "not more than one year after the
> judgement," CR 60.02, while the former must be "made
> within a reasonable time." *Thus, it appears that fraud
> perpetrated in the courtroom or through testimony under
> oath is subject to a one-year limitation while fraud
> occurring outside the courtroom that interferes with
> presentation of the losing party's evidence to the extent
> that he or she is "prevented from appearing or
> presenting fully and fairly his side of the case" is not
> subject to that limitation.* 7 Kurt A. Philipps, Jr.,
> *Kentucky Practice*, CR 60.02, cmt. 6 (5th Ed. 1995).
> Philipps goes on to say: "It may be said the language
> specifying [fraud upon the proceeding] is quite broad and
> allows for flexibility in the determination of what
> constitutes 'fraud affecting the proceedings' where the
> net effect would cause an unjust judgment to stand." *Id.*
> While finality of judgment is a laudable goal, it cannot
> take precedence over the fair and equitable resolution of
> disputes.

*Terwilliger*, 64 S.W.3d at 818-19 (emphasis added). The Court went on to discuss

applicable cases, including *Burke v. Sexton*, 814 S.W.2d 290 (Ky.App. 1991),

where the wife allowed an unconscionable settlement agreement to become final

because the husband misled the wife into believing he was no longer pursuing a

divorce. The circuit court allowed the wife to reopen under these circumstances

and the settlement agreement was overturned, and when the husband appealed, the

Court of Appeals affirmed. The *Terwilliger* Court explained the reasoning in

*Burke* and why it was correct:

> the Court of Appeals found this sort of situation to fall
> under CR 60.02(d) as a "fraud affecting the
> proceedings." . . . While in [*Burke* and *Terwilliger*] a
> fraud was perpetrated against a party to the dispute, the
> ultimate result was a fraud against the court. Both in the
> case at bar, and as noted by the court in *Burke*, [814
> S.W.2d at 292,] allowing the original decree to stand
> would be a miscarriage of justice.

*Terwilliger*, 64 S.W.3d at 819.

Brian never had a fair opportunity to present his claim that he should

be determined to be S.J.W.'s father at the trial on the merits. Brian's right to have

a paternal relationship with S.J.W. was far more important than a party receiving

an unfair share of assets due to deliberate undervaluing or a faked reconciliation,

but he was given no opportunity to assert his rights before Jason was declared to be

S.J.W.'s father.

Based on the undisputed facts, fraud occurred against Brian as he was

never joined as a party or informed that he needed to intervene during the

dissolution proceeding or else Jason would become S.J.W.'s legal father. Brian

was thus prevented from appearing and asserting his rights. A fraud was also

perpetrated against the family court as it was prevented from knowing the facts

which would have made it require that Brian be joined as a party or delay entry of

the judgment pending a separate paternity action.

We do not believe Jason or Michelle were attempting to do anything improper. Instead, they were trying to safeguard S.J.W. from being deprived of having equal legitimate status with his siblings and maintenance of the established relationship with the only father he had ever known. They likely believed they were acting in S.J.W.'s best interest.

Nevertheless, their actions resulted in a fraud to the proceedings, and makes it appropriate to affirm the grant of CR 60.02 relief at this juncture. Their longstanding knowledge that Brian was likely S.J.W.'s biological father and failure to act to protect Brian's rights militates against the granting of the relief sought by Brian being inequitable to them. As there is no true dispute that Brian is S.J.W.'s biological father as established by the DNA test in the paternity action, the alteration of the judgment to acknowledge that fact was appropriate. This allows Brian to receive consideration for custody and timesharing based on his status as S.J.W.'s biological father.

Accordingly, we affirm the Simpson Family Court's orders allowing Brian to intervene and granting his request for CR 60.02 relief.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Samuel J. Crocker
Franklin, Kentucky

BRIEF FOR APPELLEE BRIAN
STRAIN:

Christopher T. Davenport
Kaitlyn S. Embry
Bowling Green, Kentucky