# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 17, 2023 Session

## JAMES L. COXWELL EX REL v. WATCO COMMUNITIES LLC ET AL.

**Appeal from the Chancery Court for Sevier County**
No. 21-9-212    James H. Ripley, Chancellor

No. E2023-00258-COA-R3-CV

This appeal concerns the denial of a motion to intervene. John A. Watson, Jr. ("Watson") moved to intervene in a lawsuit filed by James L. Coxwell, Sr. ("Coxwell"), by and through his attorney-in-fact, Cam Coxwell Shiflett, against Watco Communities, LLC ("Watco") and MountainBrook Assisted Living, LLC ("MountainBrook") ("the Companies," collectively). Watson and Coxwell were once in business together but had a falling out. Coxwell sued to recover money he had loaned the Companies. Coxwell and the Companies reached a settlement, and an agreed order was entered to that effect. Watson's motion to intervene came after entry of the agreed order and his having known about the litigation for many months. Watson objects to language in the agreed order between Coxwell and the Companies providing for joint and several liability by the Companies, which he says is unfavorable to his interests. The Chancery Court for Sevier County ("the Trial Court") denied Watson's motion to intervene, citing untimeliness. Watson appeals. We find no abuse of discretion in the Trial Court's denial of Watson's motion to intervene. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Roy E. Barnes, Marietta, Georgia, and Mark S. Dessauer, Kingsport, Tennessee, for the appellant, John A. Watson, Jr.

Gregory Brown and W. Scott Hickerson, Knoxville, Tennessee, for the appellee, James L. Coxwell, Sr., by and through his attorney-in-fact, Cam Coxwell Shiflett.

Ryan E. Jarrard, Knoxville, Tennessee, for the appellees, Watco Communities, LLC and MountainBrook Assisted Living, LLC.[1]

## OPINION

## Background

In 2003, Watco was formed by Coxwell and Watson pursuant to Georgia law in order to acquire and operate an assisted living facility in Sevierville, Tennessee. In 2009, MountainBrook was formed to manage the assisted living center. Watco and MountainBrook consisted of two equal members, Coxwell and Watson. However, over time, disagreements arose between the two. Eventually, Watson filed suit in Georgia seeking to dissolve Watco. In November 2019, Watson filed suit in the Trial Court seeking to dissolve MountainBrook. Watson also sought the appointment of a receiver.

In September 2021, Coxwell sued the Companies in the Trial Court for declaratory judgment, breach of contract, unjust enrichment, and equitable subrogation. Coxwell had made certain loans to the Companies and wanted to be reimbursed. In November 2021, the Companies filed an answer. They also moved to consolidate Coxwell's lawsuit with Watson's. Watson was provided notice of this filing. The Trial Court declined to consolidate the cases. Following negotiations, Coxwell and the Companies arrived at a settlement. Throughout this process, Watson received periodic status updates from the Receiver. In September 2022, Coxwell and the Companies filed in the Trial Court a Stipulation and Joint Motion to Approve Settlement. Later in September 2022, an agreed order was entered approving the parties' settlement.

Watson learned about and opposed certain language in the agreed order providing for joint and several liability of the Companies. As Watson puts it in his reply brief on appeal, "[h]e will be harmed if the debts are joint and several rather than allocated to the company which incurred them." Watson argues essentially that the joint and several language was sprung on him. The Receiver filed a motion to alter or amend on behalf of the Companies seeking to negate the joint and several provision that Watson objected to. In October 2022, Watson filed a motion to intervene. Coxwell filed responses opposing Watson's motion to intervene and the Companies' motion to alter or amend. In Coxwell's estimation, a settlement had been reached and Watson had no basis for intervening in the lawsuit.

---

[1] The Receiver for the Companies filed a notice of intent with this Court stating "that he does not intend to file a brief or participate in oral arguments in this matter" as he intends to remain "neutral."

In February 2023, the Trial Court entered orders denying the Companies' motion to alter or amend and Watson's motion to intervene. The Trial Court attached a transcript of its oral rulings on both motions to its orders. Regarding the Companies' motion to alter or amend, the Trial Court stated, in part:

> The remedy to alter or amend is available to correct errors, as I said, or situations where the law has changed -- the law has not changed -- where new evidence could be available -- no one asserts that there's any new evidence that would change or would cause this, a need for this Order to be changed -- or to correct errors of law.
>
> This does not reflect any error of law the way the judgment is drawn. The rule is not available to a party as a mechanism simply to undo its agreement. Agreements have to be enforced, as the Court said, the way they're written. So for all the reasons stated previously, the Motion to Alter or Amend the Judgment is denied. The next motion is a Motion to Intervene, and I'll hear counsel on that.

With respect to Watson's motion to intervene in the lawsuit, the Trial Court stated, as relevant:

> THE COURT: Okay. All right. Well, the following will be the Court's Findings of Fact and Conclusions of Law with regard to the Motion to Intervene. As the Court noted previously, final judgment entered in this case by agreement of the parties on September the 29th, 2022. Mr. Watson, who seeks to intervene in this case, had notice, clearly had notice of the pending litigation, was provided reports by the receiver periodically. He is a principal in defendant LLC, so even if he didn't have actual knowledge, the Court would be convinced that he would be charged with constructive knowledge of the pending litigation.
>
> The key to this issue of whether intervention should be permitted is the timeliness of the application. The case cited by counsel, American Materials Techs, LLC v. City of Chattanooga, which is found at 42 S.W.3d 914, it's a 2000 opinion of the Tennessee Court of Appeals, Eastern section, makes it very clear that timeliness of the Motion to Intervene is the touchstone and, in fact, the Rule reflects that.
>
> Rule 24.01 begins, "upon timely motion." That's 24.01, dealing with intervention as of right. 24.02 begins with the same phrase, "upon timely motion, any person may be permitted to intervene." So the real question and the crux of this matter is, was this attempt to intervene timely, and the general rule of Tennessee is that a consent decree, which is what we have here, is a final judgment or decree and that, accordingly, in the absence of special

-3-

circumstances, intervention is precluded under the general rule against intervention after entry of a final judgment or decree.

The rationale for that rule is clear. There has to be finality at some point in these cases, and once the Court has pronounced judgment, whether as a consent decree or otherwise, we've reached the point of finality. There are no special circumstances in this case that would apply to permit the intervention.

An intervenor must show that they exercised proper diligence to attempt to come into the case while the case is still pending, basically. In this case, the Motion to Intervene was filed more than 30 days after entry of the final judgment. I understand that the would-be intervenor contends that, well, once the Motion to Alter or Amend was filed, that tolled the time on running of appeal, and I understand that argument, but nonetheless, it was not timely filed.

The Court tells us, in the matter of American Materials Techs, that we look to various factors. Number one, the point to which suit has progressed. Well, this suit has progressed all the way to finality, as I said. Number two, the purpose for which intervention is sought. The purpose for which intervention is sought is to undo a deal. It's to undo an arm's length transaction that is embodied in a consent decree. That is not a proper purpose for intervention.

The third factor, the length of time preceding the application during which a proposed intervenor knew or reasonably should have known of his interest in the case. As the Court said, for many, many, many months, Mr. Watson knew or should have known of the pendency of this action and the need, should he see fit, to intervene. Number four, the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention.

Well, among other things, the parties to this case, particularly Mr. Coxwell, lost his opportunity to go to trial. The Court had set this matter for trial, and but for the entry of this judgment, Mr. Coxwell would have had his opportunity to bring this matter before the Court for a hearing on the merits. For the intervenor to come along now and say that the Court should set that aside, should set aside that judgment, is just fundamentally unfair.

This was a bargained for conclusion to a case, and it should be enforced, and allowing intervention at this point would necessitate, in effect, setting aside that final judgment. There are no unusual circumstances that mitigate in favor of the intervention in this case, and for all of the reasons stated, the Motion to Intervene is denied.

Watson timely appealed to this Court.

## Discussion

Although not stated exactly as such, Watson raises the following issues on appeal: 1) whether the Trial Court erred in denying his motion to intervene; 2) whether the Trial Court erred in exercising subject matter jurisdiction in light of the doctrine of prior suit pending; and 3) whether the Trial Court erred by failing to apply the elements of prior suit pending. Coxwell raises an issue of whether the Trial Court erred in denying his motion to strike based upon the failure of Watson's counsel to move for pro hac vice admission.[2]

We first address whether the Trial Court erred in denying Watson's motion to intervene. Our Supreme Court has articulated the standard for reviewing a trial court's denial of a motion to intervene as follows:

> The standard of review on appeal for the denial of intervention as of right is de novo, except for the timeliness of the application which is reviewed under an abuse of discretion standard. *Michigan State AFL-CIO* [*v. Miller*], 103 F.3d [1240,] 1245 [(6th Cir. 1997)]. The standard of review for the denial of permissive intervention is abuse of discretion. *Chaille v. Warren*, 635 S.W.2d 700, 703 (Tenn. App. 1982). An abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is therefore arbitrary, illogical, or unconscionable. *See Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996); *State v. Carter*, 890 S.W.2d 449, 454 (Tenn. Crim. App. 1994).

*State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000).

The Tennessee Supreme Court also set out a would-be intervenor's burden as follows:

---

[2] The Trial Court, citing Rule 8, RPC 5.5(c)(2) of the Rules of Tennessee Supreme Court, found in part on this subject:

> As noted previously, the Georgia Attorneys are admitted, *pro hac vice*, in the Companion Case which is "pending" in this Court and are, thus, "authorized by law" to practice in that case. The issues before the Court in the Instant Case are "reasonably related" to the Companion Case. Accordingly, the Court finds that the Georgia Attorneys are permitted to practice, on a temporary basis in the Instant Case.

A party seeking to intervene as of right under Rule 24.01 must establish that (1) the application for intervention was timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the pending litigation; (3) the proposed intervenor's ability to protect that interest is impaired; and (4) the parties to the underlying suit cannot adequately represent the intervenor's interests. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989). The intervenor has the burden of establishing all four of these elements or else the motion to intervene will be denied. *Id.*

*Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 190-91.

In the appeal at bar, the central issue is whether Watson's motion to intervene was timely. Regarding whether an attempted intervention is timely, this Court has discussed the applicable factors to consider:

The timeliness of an intervention is governed by equitable principles, and is determined by the facts and circumstances of each particular case. In determining whether an intervention is timely, courts consider the following factors:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Velsicol Chemical Corp. v. Enenco, Inc.*, 9 F.3d 524, 531 (6th Cir. 1993); *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir. 1984).

*American Materials Technologies, LLC v. City of Chattanooga*, 42 S.W.3d 914, 916 (Tenn. Ct. App. 2000).

In his brief, Watson states that his intervention is "not only allowed but demanded." He explains that he "is a fifty percent owner of both Watco and MountainBrook and if the judgment should be a joint and several one, then his ownership may very well be destroyed." Watson also contends that his motion to intervene was timely filed. He cites

*Hamilton National Bank v. Woods*, 238 S.W.2d 109, 112 (Tenn. Ct. App. 1948) for the following proposition:

> In our opinion, under the practice in this State, intervention, by a third party demonstrating an interest in the subject matter, will be permitted upon petition seasonably filed; or even after judgment, provided the rights of the original litigants are not injuriously affected, the court still retains jurisdiction over the judgment and subject matter, and good and sufficient cause is shown for the delay.

(Citation omitted). For his part, Coxwell distinguishes *Hamilton Nat'l Bank* thusly: that Watson's motion to intervene was not seasonably filed; that Watson's intervention would injure the original litigants; and that the Trial Court effectively found no legitimate excuse for Watson's delay in moving to intervene.

In *Am. Materials Techs.*, this Court acknowledged *Hamilton Nat'l Bank* and stated that "intervention may be timely, after judgment, depending upon the facts." *Am. Materials Techs.*, 42 S.W.3d at 916 (citing *Hamilton Nat'l Bank*, 238 S.W.2d at 112). However, we also stated that "[g]enerally, an applicant for intervention must show proper diligence, and the right to intervene may be lost by unreasonable delay or laches after knowledge of the suit." *Id*. (Citation omitted). We set out the general rule that a "judgment or decree entered by consent of the original parties is a final judgment or decree and accordingly, in the absence of special circumstances, precludes intervention under the general rule against intervention after entry of a final judgment or decree." *Id*. (quoting 59 AM.JUR.2D *Parties*, § 207). We concluded:

> Movants contend that they made no attempt to intervene earlier, because the City had adequately represented their interest until the consent judgment was entered, and that their efforts to intervene were timely because their motion was filed within thirty days from the entry of the compromise judgment.
>
> The Chancellor's memorandum opinion entered some six weeks before the compromise judgment was filed, invited the parties input as to an appeal pursuant to Tenn. R. Civ. P. Rule 54, and their positions on the issue of any damages for the delay suffered by plaintiff. More importantly, the Chancellor dissolved the temporary injunction which had prevented plaintiff from proceeding with development of its quarry. Movants knew, or should have known, that the Chancellor had invalidated the two ordinances, and that the City's options were either to compromise or appeal the Chancellor's decision. It is clear that subsequently the City negotiated with plaintiff and

reached a proposed settlement which was publicly approved by the City Commission, followed by the entry of the compromise judgment. There is no showing that movants inquired into the status of the matter during the six weeks between the entry of the memorandum opinion and the consent judgment. Prejudice has resulted to the original parties by movants' failure to promptly move to intervene during the parties' negotiations and before entry of the consent judgment. On the basis of the record before us, we cannot say the Chancellor abused his discretion in denying intervention.

*Am. Materials Techs*., 42 S.W.3d at 916-17.

The Trial Court relied upon *Am. Materials Techs*., which articulates the factors that courts are to consider in determining the timeliness of a motion to intervene. Applying these factors, the Trial Court found that the lawsuit already had progressed to its conclusion; that the purpose of Watson's intervention was to change the terms of a bargained-for deal; that Watson waited many months to move to intervene; that Coxwell had given up his right to a trial on the merits; and that no unusual circumstances existed in the case to justify Watson's late intervention. We do not find that the Trial Court's decision lacked a legal or factual basis. On the contrary, the Trial Court applied the correct law and its findings regarding the relevant factors are amply supported by the record.

Watson knew or should have known that a settlement might be reached that, in his judgment, might well be unfavorable to his interests. He was aware of the litigation and received periodic updates. If he felt that he needed to be a party to the lawsuit in order to adequately safeguard his interests, he could have acted sooner to intervene. Instead, he moved to intervene only after the agreed order was entered. As aptly put by the Trial Court, "[t]here has to be finality at some point in these cases. . . ." A non-party is not entitled to upend a negotiated settlement at the last minute, or indeed after the last minute as in this case, merely because he is dissatisfied with the result. No injustice was done to Watson in the denial of his motion to intervene. He simply waited too long to intervene as found by the Trial Court. In view of the particular facts and circumstances of this case, the Trial Court's determination that Watson's attempted intervention was untimely was well within the range of acceptable alternative dispositions, the essence of a discretionary decision. We find that the Trial Court did not abuse its discretion in denying Watson's motion to intervene.

The parties' remaining issues are pretermitted. "[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009) (citation omitted). The D.C. Circuit Court has discussed the effect that the denial of a motion to intervene has on a failed intervenor's ability to raise other issues in a matter:

Applying these principles in a fairly recent case, we addressed a prospective intervenor's jurisdictional challenge only *after* we concluded that it had the right to intervene. *See Acree v. Republic of Iraq*, 370 F.3d 41, 50-51 (D.C. Cir. 2004), *cert. denied*, 544 U.S. 1010, 125 S.Ct. 1928, 161 L.Ed.2d 792 (2005), *abrogated in other part by Republic of Iraq v. Beaty*, 556 U.S. 848, 129 S.Ct. 2183, 173 L.Ed.2d 1193 (2009). In *Acree*, the United States sought to intervene in district court "for the sole purpose of contesting the subject matter jurisdiction of the District Court;" however, the district court denied intervention. *Id*. at 46-47. In so doing, it "considered its own subject matter jurisdiction and concluded that it retained jurisdiction." *Id*. at 47. On appeal, we declined to reach any of the "merits issues" (including the issue of subject matter jurisdiction) until *after* considering the propriety of the district court's denial of intervention. *Id*. at 49. We declared: "If the United States were not properly a party to this case, then it would have no right to appeal the District Court's judgment, and we would be required to dismiss this case without passing upon its merits for lack of a proper appellant." *Id*. (citation omitted). We ultimately concluded that intervention was proper and thus "reverse[d] the decision of the District Court denying the United States' motion to intervene and turn[ed] to the merits of the Government's jurisdictional challenge." *Id*. at 51. While we have jurisdiction to decide UWAG's appeal of the district court order denying intervention, because we conclude that the district court properly denied that motion, UWAG, a non-party, cannot appeal any other issue.

*Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1328-29 (D.C. Cir. 2013). Respectfully, as a failed intervenor, Watson is unable to raise any other issues in this matter, jurisdictional or otherwise.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, John A. Watson, Jr., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE